**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Kenneth L. THOMAS,**
**Defendant-Appellant.**

No. 85–2120.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 24, 1986.

Decided April 17, 1986.

As Amended on Denial of Rehearing and
Rehearing En Banc
June 6, 1986.

Andrew B. Spiegel, Chicago, Ill., for defendant-appellant.

Sharon E. Jones, Asst. U.S. Atty., and Anton Valukas, U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Before CUDAHY and EASTERBROOK, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.

EASTERBROOK, Circuit Judge.

From 1966 through 1976 Kenneth L. Thomas filed tax returns. Then he stopped, claiming that he had no tax liability. He filed a form informing his employer that he had 23 withholding allowances, which dramatically reduced the tax his employer withheld. He ceased filing returns.

An indictment filed March 19, 1984, charged Thomas with wilfully failing to file tax returns for the tax years 1979, 1980, and 1981, in violation of 26 U.S.C. § 7203. A superseding indictment filed October 1, 1984, retained these three charges and added four more: failing to file tax returns for

1982 and 1983, and wilfully filing false certificates asking his employer to cease all withholding on the ground that he is "exempt" from taxation, in violation of 26 U.S.C. § 7205. The 1983 return was due after the filing of the first indictment. The trial began on January 15, 1985, and the jury convicted Thomas on all counts. The district court sentenced Thomas to a total of four years' imprisonment and fined him $22,000. As the time sequence suggests, the principal problem is one of compliance with the Speedy Trial Act, 18 U.S.C. § 3161 et seq. Before considering this problem, we clear out the underbrush.

I

1. Thomas is a tax protester, and one of his arguments is that he did not need to file tax returns because the sixteenth amendment is not part of the constitution. It was not properly ratified, Thomas insists, repeating the argument of W. Benson & M. Beckman, *The Law That Never Was* (1985). Benson and Beckman review the documents concerning the states' ratification of the sixteenth amendment and conclude that only four states ratified the sixteenth amendment; they insist that the official promulgation of that amendment by Secretary of State Knox in 1913 is therefore void.

Benson and Beckman did not discover anything; they rediscovered something that Secretary Knox considered in 1913. Thirty-eight states ratified the sixteenth amendment, and thirty-seven sent formal instruments of ratification to the Secretary of State. (Minnesota notified the Secretary orally, and additional states ratified later; we consider only those Secretary Knox considered.) Only four instruments repeat the language of the sixteenth amendment exactly as Congress approved it. The others contain errors of diction, capitalization, punctuation, and spelling. The text Congress transmitted to the states was: "The Congress shall have power to lay and collect taxes on incomes, from whatever source derived, without apportionment among the several States, and without re-

gard to any census or enumeration." Many of the instruments neglected to capitalize "States," and some capitalized other words instead. The instrument from Illinois had "remuneration" in place of "enumeration"; the instrument from Missouri substituted "levy" for "lay"; the instrument from Washington had "income" not "incomes"; others made similar blunders.

Thomas insists that because the states did not approve *exactly* the same text, the amendment did not go into effect. Secretary Knox considered this argument. The Solicitor of the Department of State drew up a list of the errors in the instruments and—taking into account both the triviality of the deviations and the treatment of earlier amendments that had experienced more substantial problems—advised the Secretary that he was authorized to declare the amendment adopted. The Secretary did so.

■■■ Although Thomas urges us to take the view of several state courts that only agreement on the literal text may make a legal document effective, the Supreme Court follows the "enrolled bill rule." If a legislative document is authenticated in regular form by the appropriate officials, the court treats that document as properly adopted. *Field v. Clark*, 143 U.S. 649, 12 S.Ct. 495, 36 L.Ed. 294 (1892). The principle is equally applicable to constitutional amendments. See *Leser v. Garnett*, 258 U.S. 130, 42 S.Ct. 217, 66 L.Ed. 505 (1922), which treats as conclusive the declaration of the Secretary of State that the nineteenth amendment had been adopted. In *United States v. Foster*, 789 F.2d 457, 462–63 & n. 6 (7th Cir.1986), we relied on *Leser*, as well as on the inconsequential nature of the objections in the face of the 73-year acceptance of the effectiveness of the sixteenth amendment, to reject a claim similar to Thomas's. See also *Coleman v. Miller*, 307 U.S. 433, 59 S.Ct. 972, 83 L.Ed. 1385 (1939) (questions about ratification of amendments may be nonjusticiable). Secretary Knox declared that enough states had ratified the sixteenth amendment. The Secretary's decision is

not transparently defective. We need not decide when, if ever, such a decision may be reviewed in order to know that Secretary Knox's decision is now beyond review.

2. Thomas testified before the grand jury that returned the superseding indictment. He presented his explanations for not paying taxes, including his belief that wages are not income and an assertion that "all individual income tax revenues are gone before one nickel is spent on the services which taxpayers expect from their Government." In response to questions asked by the prosecutor, Thomas conceded that he had received technical training paid for by the Navy, payment funded by taxes. Thomas maintains that the indictment should be dismissed because of these questions, which he says are improper; because the prosecutor failed to present the grand jury with exculpatory evidence (other than Thomas's own testimony); and because the prosecutor advised the grand jurors that Thomas's legal theories are incorrect.

The short answer is that "[a]n indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for a trial of the charge on the merits." *Costello v. United States*, 350 U.S. 359, 363, 76 S.Ct. 406, 409, 100 L.Ed. 397 (1956) (footnote omitted). See also *United States v. Calandra*, 414 U.S. 338, 344–45, 94 S.Ct. 613, 618–19, 38 L.Ed.2d 561 (1974). A somewhat longer answer is that even if the district court should have required the prosecutor before trial to obtain a fresh indictment, there is no reason to restart the process now that there has been a trial and conviction. The grand jury is designed principally to prevent the prosecutor from subjecting innocent people to the burden and trauma of trial. The real "victims" of any abuse of the grand jury process are a subset of those who are indicted and acquitted at trial. We know now that Thomas was not tried unnecessarily. The Supreme Court held in *United States v. Mechanik*, —— U.S. ——, 106 S.Ct. 938, 89 L.Ed.2d 50 (1986), that procedural errors before the grand jury do not require the reversal of a conviction by the petit jury. See also *United States v. Burke*, 781 F.2d 1234, 1245 (7th Cir.1985); *United States v. Roth*, 777 F.2d 1200, 1203–06 (7th Cir.1985); *United States v. Murphy*, 768 F.2d 1518, 1533–34 & n. 2 (7th Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 1188, 89 L.Ed.2d 304 (1986). The principle disposes of Thomas's contention.

3. This assumes, however, that the petit jury properly convicted Thomas, which he denies. He asserts that the evidence was insufficient. Not so. Thomas filed returns for at least ten years, so he knew of the tax laws. The IRS sent Thomas a letter in 1978 informing him of the need to file (and the penalties for not filing). He was a field engineer at IBM, obviously capable of understanding enough to act wilfully. He failed to file a tax return for 1983, even though this was due after the return of the first indictment. It is not for want of information that Thomas did not file. A jury was entitled to find his neglect wilful, as that term is used in tax law. *United States v. Pomponio*, 429 U.S. 10, 97 S.Ct. 22, 50 L.Ed.2d 12 (1976); *United States v. Copeland*, 786 F.2d 768 (7th Cir.1985). The false certificates claiming exemption were filed knowingly; Thomas's evidentiary position here is that because IBM (on the advice of the IRS) ignored his certificates, he cannot be convicted. Section 7205 forbids the filing of "false" forms, however, and reliance on the forms is not an element of the offense. *United States v. Lawson*, 670 F.2d 923, 928 (10th Cir.1982).

Thomas relies on *United States v. Snider*, 502 F.2d 645 (4th Cir.1974), which reversed a conviction for filing a claim of three billion exemptions. The employer in *Snider* was a Friends School; the taxpayer, a Quaker, objected to the use of taxes for war; the claim of exemption, transparently symbolic, was accompanied by Snider's explanation that as an objector to war he would not pay tax voluntarily but invited the government to levy on his bank account. Toleration of this form of sym-

bolic speech does not help Thomas, who did everything within his power to deceive IBM and rid himself of tax.

■ 4. The district court gave the following instructions on the meaning of wilful conduct and the defense of good faith misunderstanding.

When the word "wilfully" is used in these instructions, it means the voluntary and intentional violation of a known legal duty. The failure to act is wilfully done if done voluntarily, purposefully, deliberately and intentionally, as distinguished from accidentally, inadvertently or negligently.

The requirement that an offense be committed "wilfully" is not met if a taxpayer in fact relied in good faith on a prior decision of the United States Supreme Court which was known to him and of [sic] his reliance was reasonable.

A good faith misunderstanding of the law based on reasonable grounds may negate wilfulness....

Defendant has testified as to his beliefs concerning the filing of income tax returns and the filing of exempt Forms W–4. If you find that these beliefs were the result of a good faith misunderstanding of the law and that his good faith was reasonable and not the result of negligence or inadvertent conduct of Mr. Thomas, then you must find Mr. Thomas not guilty. ...

Defendant has testified as to his beliefs concerning the filing of income tax returns and the filing of exempt Forms W–4. If you find that these beliefs were the result of a good faith misunderstanding of the law and that his good faith was reasonable, then you must find Mr. Thomas not guilty. Alternatively, if you find that his conduct was negligent or inadvertent, then you must also find him not guilty.

The last two instructions are two versions of an instruction proposed by Thomas—the second one the accurate version, the first a misreading that the court corrected by giving the second. Thomas says that the correction was confusing, but we

do not think so. The jury ended up with the correct instruction.

■ His principal contention is that all of the wilfulness instructions are flawed because they afford a defense of "good faith misunderstanding" only to one whose belief is "reasonable." This objective component was approved in *United States v. Moore*, 627 F.2d 830 (7th Cir.1980), *cert. denied*, 450 U.S. 916, 101 S.Ct. 1360, 67 L.Ed.2d 342 (1981), which observed that a mistake-of-law defense should be confined within exceptionally narrow bounds. Two other courts have disagreed with *Moore*. *United States v. Phillips*, 775 F.2d 262, 264 (10th Cir.1985); *United States v. Aitken*, 755 F.2d 188, 191–93 & n. 2 (1st Cir. 1985).

Since *Aitken* disagreed with *Moore*, defendants have asked us to abandon the standard of that case. We have twice declined to revisit *Moore* when the defendant did not adequately press an objection in the district court. *United States v. Bressler*, 772 F.2d 287, 290 (7th Cir.1985); *United States v. Witvoet*, 767 F.2d 338, 339 (7th Cir.1985). See also *United States v. Anton*, 683 F.2d 1011, 1018 (7th Cir.1982) (following *Moore*). We decline again today. The "reasonableness" requirement appeared in the instruction that Thomas himself proposed. And when the district court was discussing its own wilfulness instruction, it asked: "Is that [the instruction] agreeable?", to which Thomas's counsel replied "It is agreeable, your Honor." After the jury retired to consider its verdict Thomas moved for a mistrial, relying in part on an objection to the wilfulness instruction, but this objection came too late under Fed.R.Crim.P. 30. *Bressler* and *Witvoet* hold that, no matter the status of *Moore*, instructions like the ones given here are not plain error.

## II

The most difficult questions come from the time that lapsed between the indictments and the trial. The superseding indictment, which was filed on October 1,

1984, does not pose a serious problem. Thomas appeared and pleaded to the four new charges in this indictment on October 9, 1984; his trial began 97 days later, on January 15, 1985. The Speedy Trial Act allows 70 days from appearance within which to get the trial underway, 18 U.S.C. § 3161(c)(1), less any excludable time. At least 27 days between October 9 and January 15 were excludable for reasons discussed below, and so the trial on the superseding indictment was timely.

Things are otherwise for the three charges contained in the original indictment, filed March 19, 1984. Thomas appeared before a judicial officer on March 26, 1984, and it took 295 days to bring these charges to trial. The government contends that all but 19 were excludable. Its position seems to be that everything necessary to prepare the case for trial must produce excludable time—that the 70 days refers only to time when everyone was twiddling his thumbs. That is not so. The statute requires the government to do all of the things ordinarily necessary to get a case to trial within the 70 days; only a few categories of time are excludable. Thomas, on the other hand, contends that almost none of the time is excludable. The parties having done little to narrow their dispute, we review the course of events.

The time started on March 26, 1984. On April 9, 1984, the magistrate set a briefing schedule for the filing of pretrial motions. This brought into play the holding of *United States v. Tibboel*, 753 F.2d 608, 610 (7th Cir.1985), that if a party requests an allocation of time within which to prepare and file motions, the ensuing time is excludable under 18 U.S.C. § 3161(h)(1). The time to prepare motions is not covered by § 3161(h)(1)(F), which excludes "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion". But the statute allows judges to exclude extra time if necessary to accommodate complex or unusual motions. 18 U.S.C. § 3161(h)(8) (B)(ii). The legislative history of the 1979

amendments to the Speedy Trial Act demonstrates that § 3161(h)(8)(B)(ii) may be used to afford extra time for the preparation of complex motions as well as for their disposition. See S.Rep. No. 96–212, 96th Cong., 1st Sess. 34 (1979). *Tibboel* relied principally on the fact that § 3161(h)(1) begins by reciting that excludable time includes "but [is] not limited to" the periods expressly provided; § 3161(h)(8)(B)(ii) fortifies the conclusion of *Tibboel*.

Thomas then asked for and got a series of extensions within which to file his motions, and after the government answered Thomas got a further extension to reply. All papers were on file by July 10, 1984, when a magistrate took the motions under advisement. This started the period of exclusion provided by § 3161(h)(1)(J): "delay attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court." We held in *Tibboel* and *United States v. Janik*, 723 F.2d 537, 544 (7th Cir.1983), that this exclusion—and not the more elastic "prompt disposition" proviso of § 3161(h)(1)(F)—governs the period that may be excluded while a motion is under advisement. This, too, is strongly supported by the legislative history. See S.Rep. 96–212, *supra*, at 33–34; H.R.Rep. No. 96–390, 96th Cong., 1st Sess. 10–11 (1979), U.S.Code Cong. & Admin. News, 1979, pp. 805, 814, 815.

The picture is complicated, however, by the fact that the statute refers to the "proceeding", as if there were bound to be only one, and "the court" as an institution rather than to a particular judicial officer. Thomas filed two motions to dismiss the indictment, three motions concerning discovery, and a motion to suppress evidence, six separate documents in all, over a period of weeks. The case then went to a magistrate and as we relate below to the judge. *Tibboel* and *United States v. Regilio*, 669 F.2d 1169, 1172–73 (7th Cir.1981), *cert. denied*, 457 U.S. 1133, 102 S.Ct. 2959, 73 L.Ed.2d 1350 (1982), allow a court faced with multiple motions to take more than 30

days, without granting a continuance under § 3161(h)(8)(B)(ii), which was how Congress expected the court to deal with complex matters. We recognized in *Tibboel* that other courts have enforced the 30 day limit even when there were multiple motions, but *Tibboel* and *Regilio* control here. Our problem then is now much time beyond 30 days is excludable in a case of this character.

The magistrate took the motions under advisement on July 10 and on August 1 issued a 17-page report and a recommendation to deny all six motions. The clock, stopped since April 9, commenced to run. The motions were no longer under active consideration, not unless the defendant objected to the recommendations, which under the local rules he had ten days to do. These ten days are not automatically excluded; under *Tibboel* only time expressly granted by the court is excluded. Otherwise far too much time would be excluded, for in a sense every day that passes after the indictment is spent "preparing" things. The Speedy Trial Act sets 70 days as the limit on ordinary preparation. So on August 1 the clock started, just as it would have done if the judge rather than the magistrate had written the opinion. The difference is that the magistrate's recommendation was not final, which set the stage for a further exclusion if Thomas objected. (It may also have required a continuance under § 3161(h)(8)(A) or (B)(ii) if the judge had overruled the magistrate, for then the time spent preparing for trial on the assumption that the magistrate's recommendations would be adopted might be wasted. We need not consider this possibility further.)

The "if" came true on August 13, when Thomas filed objections. The prosecutor did not ask for time to respond; indeed the prosecutor did not respond. So as of August 13 the case was back under advisement, and the time was again subject to exclusion under § 3161(h)(1)(J). But for how long? The magistrate had taken 22 days. Did this leave eight more for the judge, or did it start a new 30-day period

(subject to "reasonable" increase because Thomas filed six motions)? The Eleventh Circuit—so far as we can tell, the only court that has considered this question— has held that the district judge has a full 30 days. *United States v. Mastrangelo*, 733 F.2d 793, 796 n. 2 (11th Cir.1984); *United States v. Mers*, 701 F.2d 1321, 1335–37 (11th Cir.), *cert. denied*, 464 U.S. 991, 104 S.Ct. 481, 78 L.Ed.2d 679 (1983). The court reasoned in *Mers* that the judge's 30 days is supposed to begin only after all of the preparatory activity (hearings and the like) has been completed and the time for that purpose exhausted under § 3161(h)(1)(F). *Mers* treated the proceedings before the magistrate as time necessary to get the motions in position for consideration by the judge, and it therefore concluded that the judge has thirty days of his own to act. It found support in the Judicial Conference's *Guidelines to the Administration of the Speedy Trial Act of 1974* 43 (1979), which state: "[W]hen a pretrial matter is considered by both a magistrate and a judge ... the Committee believes that the [Speedy Trial Act] permits two thirty day periods for consideration of the same matter."

The statute, however, refers to 30 days' advisement by "the court" rather than by each judicial officer, and we hesitate to read "not to exceed thirty days" in § 3161(h)(1)(J) to permit an automatic exclusion of 60 days just because the judge seeks the advice of a magistrate. Magistrates are supposed to accelerate rather than retard the disposition of cases. The magistrate can turn to the case more quickly than the judge, who (aided by the magistrate's report) may concentrate on the remaining areas of dispute between the parties. If both judge and magistrate have 30 days, then in an ordinary case, with nothing more complex than a request for discovery of *Brady* materials, 60 days of automatic exclusion would be added to the 70 days provided by the Speedy Trial Act. We doubt that Congress meant to afford an all-but-automatic doubling of the statutory time. The Senate committee that recommended the 1979 amendments was worried

that motions practice would subvert the time limits of the Act, and it was adament that "the Committee does not intend to permit circumvention of the 30-days, 'under advisement' provision contained in Subsection (h)(1)(J). Indeed, if motions are so simple ... that they do not require a hearing, necessary advisement time should be considerably less than 30 days. Nor does the Committee intend that additional time be made eligible for exclusion by postponing the hearing date or other disposition of the motions beyond what is reasonably necessary." S.Rep. No. 96–212, *supra,* at 34. A judge with the report of a magistrate in hand does not need much time to act; in the rare event that the judge needs extra time, he may grant a continuance under § 3161(h)(8)(A) or (B)(ii). The argument that the magistrate's efforts simply put the judge in the position to decide could be made equally well of the time consumed by the parties in preparing motions, or even of the time consumed by the judge's law clerk in doing research. The Senate committee expressly rejected a proposal to exclude all time consumed in motions practice (*id.* at 33–34), and for the same reasons we think—at least tentatively—that "the court", which includes magistrates as well as judges, has only 30 days' excludable time under § 3161(h)(1)(J).

We are tentative, however, for several reasons. First, the parties have not briefed this question adequately, and we hesitate to act without the advantage of more complete submissions. Second, even if we allow the district judge 30 days from August 13 in which to act, there are at least 70 non-excludable days elsewhere. Third, the Speedy Trial Act should be interpreted to allow precise computations of the remaining time, so that people may readily identify which cases are furthest advanced and need priority handling. It is undesirable for an appellate court to announce a surprise interpretation of the Act. Our discussion here, then, is a warning signal rather than a holding. Our initial encounter with the issue does not leave us convinced by the holding of *Mers,* but it does not produce a firm resolution the other way. There may be other arguments that have not come to our attention, and we are open to them at the proper time.

One thing is clear, however: A judge may not take advantage of both a second 30-day period and our holding in *Tibboel* that multiple motions may permit the exclusion of more than 30 days' time under advisement. A judge who has received the report of a magistrate is well on the way to decision. There is no need of a further enlargement past 30 days for the judge just because the magistrate may have wrestled with a complex set of motions. By the time the judge sees things, the wild beast has been tamed; 30 days is more than enough. (If for some exceptional reason 30 days will not do, the only appropriate recourse is an extension under § 3161(h)(8)(A) or (B)(ii).) So the exclusion provided by § 3161(h)(1)(J) expired no later than September 12, 1984, when the 30 days were up. The clock was running again.

The district judge adopted the magistrate's report in a four-page opinion on September 20, 1984. The superseding indictment was filed on October 1, and Thomas pleaded to the four new charges on October 9. The superseding indictment does not affect the running of the time on the three charges that were in the original indictment as well as the superseding indictment. 18 U.S.C. § 3161(h)(6); *United States v. Rush,* 738 F.2d 497, 510–11 (1st Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 1355, 84 L.Ed.2d 378 (1985). On October 24 Thomas filed a request for extra time to submit new motions. The judge set a briefing schedule on October 29, so under *Tibboel* a new period of exclusion started.

On October 29 the district judge also issued a minute order stating: "Excludable delay due to filing of a superseding indictment began Oct. 1, 1984 and ends Oct. 31, 1984." The judge did not elaborate, but the parties assume that the judge meant to exclude time under § 3161(h)(8)(A), which he may if "the ends of justice served by taking such action outweigh the best interest of the public and

the defendant in a speedy trial." There are two problems. First, § 3161(h)(8)(A) states that no period may be excluded "unless the court sets forth ... its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial." The cryptic notation "due to the filing of a superseding indictment" does not supply the necessary finding; the judge did not point to anything unusual about the case. Second, a court may not exclude time retroactively under § 3161(h)(8)(A). *United States v. Janik, supra,* 723 F.2d at 545. The order of October 29 is therefore ineffectual. (We do not imply that the filing of a superseding indictment is never an appropriate occasion for exclusion of time under this section. If all parties would be better served by trying all counts together, it may be. But the district court did not give this reason, and at all events it acted belatedly.)

■ The briefing schedule set on October 29 called for Thomas to file his motions by November 2 and gave the prosecutor until November 9 to respond. Thomas did not comply with this schedule. Instead he filed a series of motions, mostly duplicating motions filed before but adding a motion based on misconduct before the grand jury. The last was filed on November 13, 1984. All of the time from October 29 through November 13 was excludable under *Tibboel.* Now complications set in. The prosecutor could not be expected to respond by November 9 to motions filed as late as November 13. The government could have had an extension for the asking—most likely until November 20, a week after Thomas's last motion (November 9, the original date, was a week after Thomas's date), longer if the government had shown need. But the prosecutor did not seek an extension. The prosecutor did nothing until January 4, 1985, when the government filed a six-page response, some four pages of which were devoted to Thomas's objections to the prosecutor's conduct before the grand jury, the only new material in Thomas's motions. The response attached the magistrate's recommendation of August 1

and the judge's decision of September 20. On January 7, 1985, the judge summarily denied Thomas's motions, and the trial began on January 15. When did the period of exclusion stop?

The prosecutor insists that the time remained excludable until January 7, when the judge denied the motion. As the prosecutor sees things, the entire time was a reasonable period in which to decide the motion. The judge did not see it this way; he acted with dispatch once the prosecutor responded. If the entire period were excluded, a prosecutor could obtain indefinite exclusions of time by the expedient of not responding to frivolous motions. That would undercut the structure of the Speedy Trial Act.

■ The correct answer, we conlcude, is that the motion must be deemed "under advisement" as soon as the prosecutor's response was due, no matter when the prosecutor filed. Section 3161(h)(1)(F) limits pre-advisement time to the date of the hearing or, if there is no hearing, for a "prompt" time. It is not a "prompt" disposition if the prosecutor takes more time than the briefing schedule contemplates. The House report on the original Act states that the advisement time now covered by § 3161(h)(1)(J) begins "after all oral argument is heard and all briefs have been submitted on the matter." H.R.Rep. No. 93–1508, 93d Cong., 2d Sess. 33 (1974), U.S. Code Cong. & Admin.News 1974, p. 7401. The committee did not consider what would happen if the government neglected to submit its brief. But the Judicial Council of the Second Circuit addressed this question in a set of guidelines that were highly influential when the Act was amended in 1979. These guidelines, which were reprinted in the hearings and the subject of favorable reference in the committee reports, state that the time excluded by § 3161(h)(1)(F) (the pre-advisement time) runs until "the date of oral argument (or the *due date* of any post-argument submission), or, if there is to be no oral argument, the *due date* of the reply papers." Judicial Council Speedy Trial Act Coordinating

Committee, *Guidelines Under the Speedy Trial Act* (1979), reprinted in *The Speedy Trial Act Amendments of 1979: Hearings on S. 961 and S. 1028 Before the Senate Comm. on the Judiciary*, 96th Cong., 1st Sess. 386, 398–99 (emphasis added). The due date rule is consistent with the Act. It fixed an easily ascertained time to shift the case to the "advisement" exclusion of § 3161(h)(1)(J), yet it preserves flexibility of the parties to seek additional time (to extend the due date) if more is necessary.

Yet what was the prosecutor's due date? We have explained why the actual due date of November 9 cannot be right; Thomas was not done filing motions until November 13. It is therefore appropriate to treat the prosecutor's due date as November 20, one week afterward, the same seven days the prosecutor had in the original schedule. On November 20 the 30 days provided by § 3161(h)(1)(J) began to run; this exclusion ended on December 20. Because Thomas made only one new motion, the 30 days is an outer limit. See *Janik, supra.* Maybe only three days, the amount the judge actually took, should be excluded. There is no reason to extend the time on account of any difficulty. The bulk of the motions had been made and rejected before, and the judge ultimately rejected all out of hand. Nothing else happened until the trial began, so the period between December 20 and January 15 is not excludable.

To add up the time that counts: March 26 to April 9 is 15 days; August 1 to August 13 is 12 days; September 12 to October 29 is 47 days; December 20 to January 15 is 26 days. That is a total of 100 days. The Act allows only 70. The convictions on counts 1 to 3 must be reversed under 18 U.S.C. § 3162(a)(2). As in earlier cases, we leave to the district court the initial decision whether the counts should be dismissed with or without prejudice.

Unfortunately, the reversal of these counts disrupts the district judge's sentencing scheme. Thomas was convicted on seven counts, each with a maximum of one year's imprisonment. The district court gave Thomas one year on each count but made counts 1 and 2, 4 and 5, and 6 and 7 concurrent, each pair of sentences to run consecutively with the other pairs. The addition of count 3 as another consecutive sentence produced a total of four years' imprisonment. The reversal of counts 1 to 3 would reduce the sentence from four years to two, and it would reduce the fine from $22,000 to $12,000. The maximum sentence on the four counts we have affirmed is four years' imprisonment and a fine of $52,000 ($25,000 on each count of failure to file a return and $1,000 on each count of filing a false withholding certificate). We therefore vacate the sentences on counts 3 to 7 and remand for resentencing. See *Pennsylvania v. Goldhammer*, —— U.S. ——, 106 S.Ct. 353, 88 L.Ed.2d 183 (1985); *United States v. Jefferson*, 760 F.2d 821 (7th Cir.), *vacated,,* —— U.S. ——, 106 S.Ct. 41, 88 L.Ed.2d 34 (1985), *on remand,* 782 F.2d 697 (7th Cir.1986).

The judgments on counts 1 to 3 are reversed and the case is remanded with instructions to dismiss the indictment on these counts. The judgments on counts 4 to 7 are vacated and the case is remanded for resentencing on these counts.