UNITED STATES of America, Appellee,

v.

Geraldo RODRIGUEZ, a/k/a Jose Rodriguez, Defendant, Appellant.

No. 94–1858.

United States Court of Appeals, First Circuit.

Argued Aug. 1, 1995.

Decided Aug. 28, 1995.

Andrew Grosso, Washington, DC, for defendant, appellant.

Mervyn Hamburg, Senior Counsel, U.S. Dept. of Justice, Washington, DC, with whom Sheldon Whitehouse, U.S. Atty., Providence, RI, was on brief for the U.S.

Before SELYA, CYR and LYNCH, Circuit Judges.·

LYNCH, Circuit Judge.

Geraldo Rodriguez seeks to set aside his conviction for conspiracy to distribute heroin, contending that he was not brought to trial within the 70 days prescribed by the Speedy Trial Act ("STA"), 18 U.S.C. §§ 3161 *et seq.*, and that two evidentiary rulings at trial were in error. Rodriguez also appeals his sentence, contending that the district court engaged in impermissible "double counting" when it departed upward based on the purity of the heroin he was convicted of conspiring to distribute while simultaneously enhancing his sentence for his leadership role. The conviction and sentence are affirmed.

## I. *Background*

Geraldo "Jose" Rodriguez and his co-defendant Juvenal Grajales arranged the sale of a total of 97.65 grams of very pure heroin (87% to 96% pure) to a DEA confidential informant named Miguel Teixeira on four occasions in February and April, 1993. Teixeira recorded his conversations with Rodriguez about the particulars of these drug deals at a number of pre-arranged meetings. At some of the meetings, Rodriguez was accompanied by Grajales or other associates; at others, Rodriguez sent associates to assist with or consummate the transactions.

Rodriguez and Grajales were arrested and indicted for distribution of heroin, distribution of cocaine, and conspiracy to possess heroin and cocaine with intent to distribute. Following a period of pretrial motion practice and discovery (set forth in the Appendix that follows this opinion), trial was scheduled for September 23, 1993. On September 22, 1993, the district court accepted a guilty plea from Grajales. On September 23, a jury was em-

paneled (but not sworn) in Rodriguez's case and trial was set to begin on September 30, 1993. On that day, before the jury was sworn, Rodriguez disputed the adequacy of the government's disclosures concerning the background of its key witness Teixeira, the DEA informant. Rodriguez demanded that he be provided with additional information. The district court, accommodating Rodriguez's position, dismissed the jury and adjourned the trial pending resolution of the discovery issue.

Some two weeks later, on October 19, 1993, Rodriguez's trial counsel filed a motion to withdraw from the case. The motion was granted after hearing, and the court allowed Rodriguez time to obtain new counsel. In November, Rodriguez's newly retained counsel Barry Wilson filed an appearance and, later, a motion for admission *pro hac vice* in the District of Rhode Island. This proved problematic. Based on a contempt order that had been issued against Wilson in an unrelated matter before Judge Pettine, the government opposed the *pro hac vice* motion. A hearing was not held on the motion until February 22, 1994. The motion was allowed.

That same day Rodriguez filed a motion to dismiss the indictment on grounds that he had not been brought to trial within 70 days as required by the STA. That motion was later denied in a bench ruling.

Trial commenced on May 12, 1994. At the close of the government's case, the district court granted Rodriguez's motion for judgment of acquittal with respect to Count 2 of the indictment, which charged conspiracy to distribute cocaine. At the conclusion of the five-day trial, the jury returned a guilty verdict on Count 1 (conspiracy to distribute heroin) but acquitted Rodriguez on all other counts (distribution of heroin; distribution of cocaine).

At sentencing, after concluding that both a two-level leadership role enhancement and an additional two-level drug-purity upward departure were warranted, the district court imposed a sentence of 121 months imprisonment to be followed by 5 years supervised release, and a $50 special assessment.

## II. *Speedy Trial Act Claim*

■ Rodriguez's STA claim raises questions of whether certain time consumed in connection with pretrial motions and jury empanelment is excludable from the requisite STA calculations. Factual findings underlying a STA determination are reviewed for clear error, while legal rulings are reviewed *de novo*. See *United States v. Storm*, 36 F.3d 1289, 1292 (5th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1798, 131 L.Ed.2d 725 (1995); *United States v. Henderson*, 746 F.2d 619, 622 (9th Cir.1984), *aff'd*, 476 U.S. 321, 106 S.Ct. 1871, 90 L.Ed.2d 299 (1986).

■ The STA requires that a defendant be tried within 70 days of the filing of the indictment or the defendant's first appearance before a judicial officer, whichever occurs later. See *Henderson v. United States*, 476 U.S. 321, 322, 106 S.Ct. 1871, 1872, 90 L.Ed.2d 299 (1986). The remedy for violation of the 70–day requirement is dismissal of the indictment either with or without prejudice, depending on consideration of several statutory factors. See 18 U.S.C. § 3162(a)(2); *United States v. Ramirez*, 973 F.2d 36, 39 (1st Cir.1992). Not every day that passes between indictment or appearance and trial, however, counts toward the 70–day limit. The Act itself enumerates various circumstances that can suspend the running of the time. See 18 U.S.C. § 3161(h). The question presented is whether the total amount of non-excludable time between indictment or judicial appearance and the filing of the pretrial motion suggesting a STA violation exceeded the statutory limit of 70 days.

■ The metaphor of a running clock is often used in STA cases. The metaphorical clock here started running on June 4, 1993, the day after the indictment, and stopped on February 22, 1994, the day Rodriguez filed his speedy trial motion, which was not renewed before trial. See *United States v. Connor*, 926 F.2d 81, 84 (1st Cir.1991) ("[A] motion for dismissal [under the STA] is effective only for periods of time which antedate the filing of the motion. Subsequent periods of delay, whether includable or excludable, are inconsequential.").

There is no dispute that three days devoted to miscellaneous proceedings concerning Rodriguez are excludable.[1] The battle lines are thus drawn around the remaining period of 260 days, and the question is whether at least 190 of those days were excludable. The answer is yes.

Much of Rodriguez's attack focuses on time associated with pretrial motions. The ground rules are set by the statute and Supreme Court case law. Section 3161(h)(1) of the Speedy Trial Act provides for the exclusion of any

. (F) delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion; [and]

.     .     .     .     .

(J) delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court.

18 U.S.C. § 3161(h)(1)(F), (J).

■ There are significant differences in the excludability of delays attributable to motions afforded hearings and those decided without hearing. Such differences result from the interplay between subsections (F) and (J). In *Henderson v. United States*, 476 U.S. 321, 106 S.Ct. 1871, 90 L.Ed.2d 299 (1986), the Supreme Court held that under subsection (F), the *entire* period beginning from the filing of a pretrial motion to the conclusion of the hearing on that motion is excludable time. *See id.* at 328–31, 106 S.Ct. at 1875–77; *see also United States v. McAf-*

*ee*, 808 F.2d 862, 864 (1st Cir.1986). Once the hearing on the motion is concluded, subsection (J) limits the amount of excludable time while the motion is "under advisement" to 30 days. *See Henderson*, 476 U.S. at 328–329, 106 S.Ct. at 1875–1876; *United States v. Ortiz*, 23 F.3d 21, 27 & n. 6 (1st Cir.1994); *United States v. Wilson*, 835 F.2d 1440, 1442 (D.C.Cir.1987).

■ When there is no hearing, a motion is deemed to be taken under advisement when "the court receives all the papers it reasonably expects...." *Henderson*, 476 U.S. at 329, 106 S.Ct. at 1876; *see also United States v. Johnson*, 29 F.3d 940, 944 (5th Cir.1994). Thus, for a motion that does not receive a hearing, subsections (F) and (J) in conjunction allow for the exclusion of all of the time from the filing of the motion to the time that the court receives all reasonably expected papers, plus no more than an additional 30 days of advisement time. *See Johnson*, 29 F.3d at 944; *see also Wilson*, 835 F.2d at 1442 ("[Sections 3161(h)(1)(F) and (J)] taken together thus exclude the time between filing of a motion and the date it is taken under advisement by the court, plus the time during which the court holds the motion under advisement (up to 30 days).").

■ The chronology against which the STA clock runs and stops according to these rules in this case is set forth in the Appendix. Pursuant to *Henderson* and § 3161(h)(1)(F) & (J), the entire 75–day period from the December 10, 1993 filing of the *pro hac vice* motion of his new counsel until the hearing on that motion (February 22, 1994) is excludable.[2] The date on which the motion was

---

1. The parties agree that the following days are excludable under 18 U.S.C. § 3161(h)(1): the day of arraignment (June 14, 1993), the day on which Rodriguez's co-defendant Grajales submitted a guilty plea (September 22, 1993); and the day on which the first jury was empaneled (September 23, 1993).

2. There is some confusion in the briefs and in the record as to when Barry Wilson's *pro hac vice* motion actually was filed. For purposes of this appeal, we assume the motion was filed on December 10, 1993, the date indicated on the district court docket sheet. It bears comment, however, that more than 45 days passed between the time that the district court granted the motion of

Rodriguez's former counsel to withdraw from the case and the filing of the *pro hac vice* motion—even though the court had expressly ordered Rodriguez to obtain new counsel within 10 days of the withdrawal. Although new counsel purported to file an "appearance" on November 4, 1993, that appearance was plainly in violation of the district court's local rules. *See* D.R.I.Loc.R. 5(c) (permitting appearance of non-member of bar only on admission *pro hac vice*). Conceivably, either the November 4 "appearance" by Wilson or the December 1 appearance by local counsel on behalf of Wilson could be treated functionally as the date on which the *pro hac vice* motion was filed. In any case, there is substantial reason to doubt whether the STA

filed and the date on which it was heard are also excludable days. *United States v. Papaleo*, 853 F.2d 16, 21 (1st Cir.1988). Similarly, the bail motion filed on October 13, 1993 (which did not receive a hearing nor, apparently, an express ruling) resulted in at least an additional 30 days of excludable time. *See Ortiz*, 23 F.3d at 27 n. 6 (pretrial. motion to which no opposition was filed, which did not receive hearing, and was never ruled upon created at least 30 days of excludable time); *see also Johnson*, 29 F.3d at 945 (same). Excluding the delays attributable to these motions reduces the STA count to 155 days.

■ The events that unfolded in late September, 1993 further reduce the count. On September 23, 1993, Rodriguez's case was called to trial, and a jury was empaneled, but not sworn. One week later, as the trial was about to begin in earnest, a last-minute dis-covery wrangle caused the still-unsworn jury to be dismissed and the trial to be postponed. The issue is how to treat the one-week interim between the jury's empanelment and its unexpected dismissal.

■ It is settled that trial generally "commences" for Speedy Trial Act purposes on the day the jury is empaneled, even if not sworn. *See Government of Virgin Islands v. Duberry*, 923 F.2d 317, 320 (3d Cir.1991) (STA is not violated so long as jury selection occurs within the 70–day period, even if swearing occurs outside the period), *cert. de-nied*, — U.S. —, 115 S.Ct. 370, 130 L.Ed.2d 322 (1994); *United States v. Fox*, 788 F.2d 905, 908–09 (2d Cir.1986) (same); *United States v. Scaife*, 749 F.2d 338, 343 (5th Cir.1984) (same); *United States v. Manfredi*, 722 F.2d 519, 524 (9th Cir.1983) (same); *United States v. Gonzalez*, 671 F.2d 441 (11th Cir.), *cert. denied*, 456 U.S. 994, 102 S.Ct. 2279, 73 L.Ed.2d 1291 (1982); *cf. United States v. Rojo–Alvarez*, 944 F.2d 959, 965 (1st Cir.1991) (dictum) (suggesting that the STA clock was "definitively stopp[ed]" when jury was empaneled); *United States v. Zayas*, 876 F.2d 1057, 1058 (1st Cir.1989) (noting the parties' agreement that STA is not violated if jury empanelment occurs within the 70–day

period *even if* actual trial commences outside the period, so long as the empanelment is not "pretextual"). Here, as far as the record reflects, the parties and the court expected as of September 23 that, following a brief recess of one week, the empaneled jury would be sworn and that opening arguments and testimony would get underway on September 30. Arguably, the September 23, 1993 jury empanelment ended the running of STA time. *Cf. Duberry*, 923 F.2d at 320 ("The Speedy Trial Act does not require that once a trial commences it continue without interruption...."). Before September 30 the parties and the court had every reason to believe that the STA clock had ceased ticking on September 23. In these circumstances, we conclude that, at a minimum, the STA clock did not run during the 6–day interim between the jury's empanelment and its dismissal. Subtracting this time brings the STA tally to 149 days.

■ We turn next to the proceedings of September 30 that unexpectedly halted the trial. That day, before the jury was sworn, Rodriguez's counsel raised discovery issues with the trial judge, contending that the government's disclosure of information concerning its key witness (Teixeira) had been sorely inadequate. Rodriguez asked that the court order the government to produce additional information. The district court, apparently seeing merit in Rodriguez's claim, decided to dismiss the jury. Defense counsel then asked the district court, "Judge, will it be necessary to file a more detailed request ...?" The court replied, "Well, you take the time you need and study the problem, then let me know what you need, all right?" Twelve days later, on October 12, 1993, Rodriguez filed a "Motion for Exculpatory Evidence" concerning Teixeira.

Rodriguez's request for additional information at the September 30, 1993 proceedings was an oral motion for supplemental discovery, which triggered the exclusionary provisions of § 3161(h)(1)(F). *See United States v. Noone*, 913 F.2d 20, 27 (1st Cir.1990) (an

---

clock was running during the 35 days that Rodriguez, in violation of the court's order, delayed in retaining appropriate counsel of record. For

purposes of this appeal, however, we put that issue to one side.

oral motion no less than a written one creates excludable time under § 3161(h)(1)(F)), *cert. denied,* 500 U.S. 906, 111 S.Ct. 1686, 114 L.Ed.2d 81 (1991); *accord United States v. Pasquale,* 25 F.3d 948, 950–51 (10th Cir. 1994); *United States v. Arbelaez,* 7 F.3d 344, 347 (3d Cir.1993); *United States v. Louis,* 814 F.2d 852, 857 (2d Cir.1987). Alternatively, the period between Rodriguez's September 30 oral request and the filing of his October 12 written motion can be viewed as time set aside by the district court as motion preparation time, which also would be excludable under § 3161(h)(1). *See United States v. Jodoin,* 672 F.2d 232, 238 (1st Cir. 1982) (allowing STA exclusion for period between defendant's oral request for time to file motion and actual filing of motion); *cf. United States v. Barnes,* 909 F.2d 1059, 1064–65 (7th Cir.1990) (recognizing excludability of time designated by district court as motion preparation time). Either way, the entire 13–day period from September 30, 1993 through October 12, 1993 is excludable time. In light of this conclusion, we need not address whether the adjournment resulting from the September 30 proceedings would be excludable as an "ends of justice" continuance under the STA. Had the district court so intended, however, it would have been preferable for it to have made an express finding on the record, as directed by the statute, explaining why the "ends of justice served by the granting of such continuance outweigh[ed] the best interests of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(8)(A); *see United States v. Bruckman,* 874 F.2d 57, 62 (1st Cir.1989) (encouraging district courts to make the requisite findings, but noting that in some circumstances, failure to state the findings for the record does not preclude excludability). In any event, subtracting the time between the September 30 adjournment and the filing of the October 12 discovery motion brings the STA tally to 136 days.[3]

There remains at least one additional source of excludable time—the discovery motion Rodriguez filed on June 16, 1993. De-

termining how much excludable time to attribute to this motion presents a novel question in this Circuit: how to treat a delay when the government defaults on its obligation to respond to a defendant's motion by a court-ordered deadline. Rodriguez's motion was filed on June 16, 1993 and did not receive a hearing. The magistrate judge overseeing the pretrial proceedings had ordered the government to file any opposition by July 23, 1993. Yet, inexplicably, the government's opposition was not filed until September 2, 1993. The government has not disputed that its opposition was untimely; nor has it pointed to anything in the record that would justify the delay. Still, citing *Henderson,* the government contends that *all* of the time from the filing of the June 16, 1993 motion to the filing of its untimely response on September 2, 1993, *plus* an additional 30 days of advisement time, should be deemed excludable under § 3161(h)(1)(F) and (J). Rodriguez disagrees, asserting that the excludable time should be limited to the period from June 16 to July 23 (the date on which the government's opposition was *due*), plus an additional 30 days of advisement time after that due date.

There are considerable reasons to credit Rodriguez's position. The government's broad reading of *Henderson* is hardly sensitive to the purposes of the STA. To be sure, *Henderson* creates an expansive rule of exclusion for delays attributable to the hearing of pretrial motions. But we doubt that *Henderson* or the Speedy Trial Act itself would permit treating as excludable time an extended delay attributable solely to the government's unexcused failure to comply with a court-ordered briefing schedule. The dangers of potential abuse lurking behind such a broad rule of exclusion are plain.

A more sensible rule might provide for the termination of excludable time under § 3161(h)(1)(F) upon the *due date* of the opposition to a defendant's pretrial motion that does not receive a hearing, absent circumstances that would reasonably justify a

---

**3.** Because the period of excludable time attributable to the October 12, 1993 written motion wholly overlaps the period independently excluded by virtue of the October 13, 1993 bail motion, the October 12 motion does not result in any extra excludable time, except for the single day of October 12.

late filing. The Seventh Circuit adheres to just such a "due date" rule. *See United States v. Thomas*, 788 F.2d 1250, 1259 (7th Cir.), *cert. denied*, 479 U.S. 853, 107 S.Ct. 187, 93 L.Ed.2d 121 (1986); *see also United States v. Baskin–Bey*, 45 F.3d 200, 203 (7th Cir.1995), *cert. denied*, — U.S. ——, 115 S.Ct. 1809, 131 L.Ed.2d 734 (1995).[4] Under that court's approach, a pretrial motion that does not receive a hearing is deemed to be "under advisement" on the date the government's response is due, even if the response has not actually been filed. *See Thomas*, 788 F.2d at 1259. Thus, as of the due date in the Seventh Circuit, § 3161(h)(1)(F) ceases to create excludable time for a motion that receives no hearing, and the 30–day period of excludable "advisement" time under § 3161(h)(1)(J) begins; after that 30–day period, the STA clock begins to run again. *See id.*

The *Thomas* rule is commended by fairly obvious considerations of policy. *See Thomas*, 788 F.2d at 1259 ("If the entire period [of delay attributable to a government's late filing] were excluded, a prosecutor could obtain indefinite exclusions of time by the expedient of not responding to ... motions. That would undercut the structure of the Speedy Trial Act."). For several reasons, however, we leave for another day whether to adopt the *Thomas* "due date" rule as the law of this Circuit. First and foremost, we need not decide definitively whether to adopt the "due date" rule in this case, because even applying that rule, the number of non-excludable days within the relevant STA period is less than 70: between the filing of the June 16 motion and the due date of the opposition (July 23) fell 38 days excludable under § 3161(h)(1)(F). Adding 30 days of excludable "under advisement" time pursuant to § 3161(h)(1)(J), the total excludable time attributable to the June 16 motion under the "due date" rule would be 68 days. Subtracting this time from the STA tally reduces the count to 68 days, under the 70–day limit. Second, the record before us is unclear as to whether there were in fact any reasons for the government's late filing.

Third, it is not evident that Rodriguez ever brought the untimeliness of the government's opposition to the district court's attention. *Cf. United States v. Welborn*, 849 F.2d 980, 986–87 (5th Cir.1988) (expressing concern that the Seventh Circuit's "due date" rule might "permit a defendant to remain silent after a deadline imposed on the prosecution had elapsed and permit a Speedy Trial Act violation to accrue without notice to the prosecution or the court").

■ Finally, we reject Rodriguez's assertion that his June 16 motion did not generate any excludable time from June 16 to July 13. His argument purports to be built upon 18 U.S.C. § 3161(c)(2), which some courts have understood to prohibit commencement of a trial sooner than 30 days after a defendant's arraignment or indictment. *See, e.g., United States v. Daly*, 716 F.2d 1499, 1504–05 (9th Cir.1983), *cert. dismissed*, 465 U.S. 1075, 104 S.Ct. 1456, 79 L.Ed.2d 773 (1984). From this reading of § 3161(c)(2), Rodriguez argues that his trial could not have commenced before July 14, 1993 and that his June 16 motion therefore could not have produced any actual "delay"—and hence no excludable time—before that date. Whether or not Rodriguez's suggested construction of § 3161(c)(2) is correct, his argument is unavailing. The argument rests on the premise that a motion which causes no actual delay of a trial date does not trigger § 3161(h)(1). However, it is clear in this Circuit as in others that the exclusions of § 3161(h)(1)(F) and (J) are "automatic," and do not depend upon any showing of actual delay. *See United States v. Rush*, 738 F.2d 497, 502 (1st Cir.1984), *cert. denied*, 470 U.S. 1004, 105 S.Ct. 1355, 84 L.Ed.2d 378 (1985); *see also United States v. Montoya*, 827 F.2d 143, 151 (7th Cir.1987); *United States v. Velasquez*, 802 F.2d 104, 105 (4th Cir.1986); *United States v. Novak*, 715 F.2d 810, 813 (3d Cir. 1983), *cert. denied*, 465 U.S. 1030, 104 S.Ct. 1293, 79 L.Ed.2d 694 (1984).

To summarize, the following periods of time are excludable under § 3161(h): the

---

4. The Fifth Circuit appears to differ. *See United States v. Martinez–Mercado*, 888 F.2d 1484, 1493 (5th Cir.1989) (rejecting appellant's contention that Speedy Trial Act does not exclude time be-tween due date of government's response under local rules and actual filing date). The Second Circuit has left the question open. *See United States v. Adeniji*, 31 F.3d 58, 66 (2d Cir.1994).

single day of June 14, 1993 (arraignment); at least 68 days following the filing of Rodriguez's discovery motion on June 16, 1993; the single day of September 22, 1993 (co-defendant's submission of plea); the 7–day period from September 23 through September 29, 1993 (jury empanelment and trial "commencement"); at least 30 days following the September 30, 1993 oral request for additional discovery; the 13 of the 30 days following the October 13, 1993 bail motion that do not overlap with the time excluded for the September 30 oral motion; and the 75–day period between the December 10, 1993 *pro hac vice* motion and the hearing on that motion. Excluding these 195 days from our starting count of 263 leaves only 68 nonexcludable days.

We need go no further. The district court did not err in denying Rodriguez's motion to dismiss the indictment for violation of the STA.

### III. *Evidentiary Issues*

#### A. *Admissibility of Audiotape*

Teixeira, the government's testifying informant, taped his meetings with Rodriguez using a concealed recording device. A total of eight tapes were admitted into evidence at trial. Rodriguez contends that the district court's admission of *one* of these tapes (Gov. Exhibit 7) was reversible error, for three reasons: (1) the tape, which purported to be a recording of a meeting between Teixeira and Rodriguez on February 19, 1993, was not properly authenticated; (2) the tape contains hearsay statements by Teixeira; and (3) the tape contains some words spoken in Spanish, creating a danger of jury confusion.

■ There was no abuse of discretion in admitting the tape over Rodriguez's authenticity objection. *See United States v. Font–Ramirez,* 944 F.2d 42, 46–47 (1st Cir.1991), *cert. denied,* 502 U.S. 1065, 112 S.Ct. 954, 117 L.Ed.2d 122 (1992). First, Teixeira identified it as the tape he recorded during a meeting with Rodriguez on February 19, 1993, and Teixeira stated that the tape fairly and accurately reflected that meeting. Teixeira further testified that he had listened to the tape and verified that his own voice was

on it. Other government witnesses confirmed that Teixeira met with defendant on the relevant date, that Teixeira was wired to record the relevant meeting, that Teixeira gave the tape to the DEA surveillance team following the meeting, and that the tape passed through a clean chain of custody preceding trial. *Cf. United States v. Rengifo,* 789 F.2d 975, 978 (1st Cir.1986) (holding that tape can be properly authenticated by someone other than participant in the recorded conversation). Rodriguez offered no evidence that the tape was somehow inaccurate or had been altered. *See United States v. Carbone,* 798 F.2d 21, 24 (1st Cir.1986).

■ Rodriguez's other objections to admission of the tape also fail. His hearsay objection falters because he did not make it at trial, arguing only a foundation objection there. Admission of the tape was not plain error. His final claim, that the presence of some Spanish words on the tape created a danger that some of the jurors might have tried to act as interpreters for other jurors, is sheer speculation and provides no basis for reversal.

■ Any alleged error in admitting the tape was harmless in any event. The jury *acquitted* defendant of all counts except for the count charging conspiracy to distribute heroin. There was a wealth of evidence to support a conviction on that count that had nothing to do with the disputed tape, including Teixeira's live testimony, the testimony of other surveilling officers, and several *other* tape recorded conversations between Teixeira and Rodriguez whose admissibility are not challenged here.

#### B. *Limitation of Impeachment Evidence*

■ During cross-examination of Teixeira at trial, Rodriguez's counsel exposed the fact that in January, 1993—shortly before the start of the operation that led to defendant's arrest—Teixeira had been convicted of perjury. As Rodriguez's counsel explored this skeleton in Teixeira's closet, there arose some question about precisely when Teixeira had served the 90–day home confinement sentence that had attached to his conviction. Teixeira testified that he had already served his sentence as of the date of Rodriguez's

trial (May 1994), but could not remember exactly when. Rodriguez, in presenting his own case, called Teixeira's probation officer to the stand. His testimony suggested that Teixeira had not in fact served his home confinement sentence by May 1994. Seeking further to impeach Teixeira's already damaged credibility, Rodriguez then moved for production of certain correspondence in the possession of Teixeira's probation officer that might indicate exactly when Teixeira had served his 90–day sentence. The court denied Rodriguez's request for the probation documents.

■ The district court's decision not to let Rodriguez pursue the collateral question of when Teixeira had served his perjury sentence is unassailable. The court had already permitted Rodriguez ample opportunity to impeach Teixeira, and it is unlikely that the probation documents would have added anything to the jury's ability to assess Teixeira's truthfulness. The district court has broad discretion to limit the extent to which a defendant is permitted to impeach a witness, *see United States v. Fortes,* 619 F.2d 108, 118 (1st Cir.1980), and there was no abuse of that discretion here. *See United States v. Tejada,* 886 F.2d 483, 488 (1st Cir.1989).

## IV. *Sentencing Issues*

The district court added a two-level adjustment to Rodriguez's base offense level in view of his role as a manager, supervisor, or leader of criminal activity. U.S.S.G. § 3B1.1(c). This enhancement resulted in a total offense level of 28, which yielded (given a criminal history category of I), a guidelines sentencing range of 78–97 months. The court then departed upward from that range (by the equivalent of two offense levels) pursuant to U.S.S.G. § 2D1.1, comment. (n. 9) and § 5K2.0, in consideration of the unusually high purity of the drugs that defendant had been dealing. Consequently, the court imposed a sentence of imprisonment of 121 months.

■ Rodriguez's claim that there was insufficient evidence to support a finding that he played a leadership role for purposes of U.S.S.G. § 3B1.1(c) is without merit. The district court's finding, made with the benefit of all of its observations at trial, is entitled to,

and is given here, considerable deference. *See United States v. Andujar,* 49 F.3d 16, 25 (1st Cir.1994). We see no basis for declaring that finding to be clearly erroneous.

■ Rodriguez's next complaint, that he received a substantially heavier sentence than his co-defendant Grajales, is also without merit. Absent misapplication of the Guidelines, the mere fact of the disparity is of no consequence. *See United States v. Wogan,* 938 F.2d 1446, 1448–49 (1st Cir.), *cert. denied,* 502 U.S. 969, 112 S.Ct. 441, 116 L.Ed.2d 460 (1991). Besides, the difference is easily explained. Rodriguez, unlike Grajales (who pleaded guilty before trial) was sentenced against the backdrop of a full trial record that exposed in sharp focus the complete extent of his criminal behavior. *Cf. United States v. Rodriguez–Cardona,* 924 F.2d 1148, 1160–61 (1st Cir.), *cert. denied,* 502 U.S. 809, 112 S.Ct. 54, 116 L.Ed.2d 31 (1991).

■ Rodriguez's final complaint is that his sentence was twice enhanced for the same or similar aspects of his criminal conduct through the simultaneous imposition of the leadership-role enhancement and the drug-purity upward departure. Rodriguez focuses this double-counting argument on application note 9 to U.S.S.G. § 2D1.1, which explains that a drug's high purity "is probative of the defendant's role or position in the chain of distribution." U.S.S.G. § 2D1.1, comment. (n. 9). From this language, Rodriguez argues that an upward departure based on drug purity is duplicative of a leadership role enhancement.

In this case however, the district court's finding of leadership role did not depend upon an inference from heroin purity. Rather, the court found directly that Rodriguez "used his mules and lackeys to make deliveries for him and [that] he exercised leadership in some of these deliveries by using underlings." Thus, the leadership-role enhancement was not driven by any consideration of drug purity.

Furthermore, application note 9 does not say that drug purity and a defendant's leadership role are mutually exclusive sentencing considerations. The application note specifically states that "[t]rafficking in controlled substances . . . of unusually high purity may

warrant an *upward departure,*" U.S.S.G. § 2D1.1, comment. (n. 9) (emphasis added), not that high purity can provide a basis for the leadership role adjustment set forth in § 3B1.1(c). Moreover, the notion of "leadership role" in § 3B1.1(c) is neither conceptually nor factually equivalent to the notion of "role or position in the chain of distribution" referred to in § 2D1.1 application note 9. This court has in fact previously affirmed a similar combination of upward adjustments. *See United States v. Diaz–Villafane,* 874 F.2d 43 (1st Cir.1989), *cert. denied,* 493 U.S. 862, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989). There was no error in the calculation of Rodriguez's sentence.

*Affirmed.*

### APPENDIX

#### Pretrial Chronology

Jun. 3, 1993 Indictment.

Jun. 14, 1993 Arraignment. Magistrate judge issues scheduling order directing, *inter alia,* that defendant file any pretrial motions by July 13, 1993, and that government file any responses by July 23, 1993.

Jun. 16, 1993 Rodriguez files motion for discovery and disclosure. Due date of government's opposition is July 23, 1993; but opposition is not filed until Sept. 2, 1993.

Sep. 2, 1993 Government responds to motion filed by Rodriguez on June 16, 1993.

Sep. 22, 1993 Co-defendant Grajales submits guilty plea; district court accepts plea.

Sep. 23, 1993 Initial jury in Rodriguez's case is selected but not sworn.

Sep. 30, 1993 Before jury is sworn, Rodriguez requests disclosure by government of additional information concerning its key witness. Jury is dismissed and Rodriguez's trial is postponed pending resolution of discovery issues.

Oct. 12, 1993 Rodriguez files "Motion for Exculpatory Evidence."

Oct. 13, 1993 Rodriguez files motion to reconsider bail.

Oct. 19, 1993 Rodriguez's counsel files motion to withdraw.

Oct. 25, 1993 Hearing held on motion to withdraw; the court allows the motion.

Court gives Rodriguez 10 days to obtain new counsel.

Nov. 4, 1993 Rodriguez's new counsel Barry Wilson, not a member of the district court bar, purports to file an "appearance."

Dec. 1, 1993 Local counsel files appearance on behalf of Barry Wilson.

Dec. 10, 1993 Barry Wilson files motion for admission *pro hac vice.* The government opposes the motion.

Feb. 22, 1994 Hearing held on *pro hac vice* motion. The court allows the motion.

Feb. 22, 1994 Rodriguez files motion to dismiss indictment for violation of Speedy Trial Act.

Apr. 28, 1994 Hearing held on motion to dismiss; the court denies the motion.

May 12, 1994 Rodriguez's trial commences.