UNITED STATES, Plaintiff,

v.

John William KEGEL, a/k/a John William Taft, Defendant.

No. 95–300–CR–T–21(E).

United States District Court, M.D. Florida, Tampa Division.

Feb. 13, 1996.

Sharon Lever, Federal Public Defender's Office, Middle District of Florida, Tampa, FL, for defendant.

Wanda Heard, U.S. Attorney's Office, Middle District of Florida, Tampa, FL, for U.S.

## ORDER

McCOUN, United States Magistrate Judge.

THIS MATTER is before the court on Defendant John William Kegel's **Motion to Dismiss Information,** (Doc. 13). By this motion, Defendant seeks to dismiss his Criminal Information (Doc. 1), on grounds that the Child Support Recovery Act of 1992, 18 U.S.C. § 228, (hereinafter, "CSRA"),[1] is unconstitutional. Specifically, Defendant argues that the statute violates Tenth Amendment principles of comity and federalism.[2] As a second ground, the Defendant argues that the statute is an unconstitutional exer-

---

**1.** In pertinent part, § 228 states,

> Whoever willfully fails to pay a past due support obligation with respect to a child who resides in another State shall be punished as provided in subsection (b).

18 U.S.C. § 228(a).

The term "past due support obligation" is defined as:

> [A]ny amount ... determined under a court order or an order of an administrative process pursuant to the law of a State to be due from a person for the support and maintenance of a child or of a child and the parent with whom the child is living; and ... that has remained unpaid for a period longer than one year, or is greater than $5,000....

18 U.S.C. § 228(c).

**2.** The Tenth Amendment provides:

> The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people.

U.S. Const.Amend. X.

cise of congressional power under the Commerce Clause. The Government has filed a response in opposition, (Doc. 14).

## I.

Defendant John William Kegel is charged by Information that, between May 10, 1984 through September 20, 1995, he intentionally and willfully failed to pay past due child support as required by court order of the Circuit Court of Pasco County, Florida. The Information further alleges that the Defendant resides in a state other than Florida, has owed past due child support in excess of one year and owes an amount in excess of $5,000.

## II.

Defendant argues two grounds for striking down the CSRA. First, CSRA is in contravention to the tenets and principles of the Tenth Amendment of the Constitution in that it violates notions of federalism and comity. Second, the statute was unconstitutionally enacted in violation of the Commerce Clause because the activity proscribed has no substantial affect on interstate commerce. For reasons discussed below, the court rejects both arguments.

## A.

■ Pursuant to the principles of the Tenth Amendment, the Defendant argues that CSRA offends notions of federalism and comity, specifically because it regulates criminal activity and matters of domestic relations. While case law cited by counsel has an initial appeal, it is ultimately unpersuasive. The federal courts have traditionally refrained from exercising authority over matters broadly described as "domestic relations." *See Barber v. Barber,* 62 U.S. (21 How.) 582, 584, 16 L.Ed. 226 (1858) ("We disclaim altogether any jurisdiction in the courts of the United States upon the subject of divorce, or for the allowance of alimony....."). *See generally Simms v. Simms,* 175 U.S. 162, 20 S.Ct. 58, 44 L.Ed. 115

(1898). Likewise, in criminal matters, "'the States possess primary authority for defining and enforcing the criminal law.'" *United States v. Lopez,* —— U.S. ——, —— n. 3, 115 S.Ct. 1624, 1631 n. 3, 131 L.Ed.2d 626 (1995) (citations omitted).

■ However, in the instance of the so-called domestic relations exception, the exception is neither a blanket exception nor all encompassing. For example, enforcing a decree involving alimony or child support is outside the scope of the exception. *See Ankenbrandt v. Richards,* 504 U.S. 689, 702, 112 S.Ct. 2206, 2214, 119 L.Ed.2d 468 (1992) [3]; *Barber,* 62 U.S. (21 How.) at 602. Enforcement, according to the Court, does not bring into play issues of comity and federalism because the court does not have to "enter the habitations and ... the chambers and nurseries of private families, and inquire into and pronounce upon the morals and habits and affections or antipathies of the members of every household." *Barber,* 62 U.S. (21 How.) at 602. In fact, *Ankenbrandt* makes it clear that enforcement is different. "[T]he domestic relations exception encompasses only cases involving the *issuance* of a divorce, alimony, or child custody decree...." *Ankenbrandt,* 504 U.S. at 704, 112 S.Ct. at 2215 (emphasis added). In this court's view, the imposition of criminal penalties for failure to pay child support is analogous to enforcement actions over which the federal courts have long accepted jurisdiction.

■ CSRA, also, does not violate these same Tenth Amendment notions of federalism and comity simply because it is a federally enacted criminal statute. "Congress ... can criminalize conduct outlawed by states without violating the Tenth Amendment." *United States v. Sage,* 906 F.Supp. 84, 92 (D.Conn.1995). *See United States v. Bishop,* 66 F.3d 569, 578 (3d Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 681, 133 L.Ed.2d 529 (1995)). Although States usually are the primary enactors and enforcers of criminal law, they have not cornered the market. They do

---

**3.** *Ankenbrandt* makes the point that the domestic relations exception to diversity jurisdiction is based not on constitutional grounds, but on a long-standing construction of the diversity stat-

ute. *Ankenbrandt,* 504 U.S. at 700–01, 112 S.Ct. at 2213–14. There is no constitutional basis driving this analysis.

not have the *sole* authority in this matter. *See United States v. Enmons,* 410 U.S. 396, 411, 93 S.Ct. 1007, 1015, 35 L.Ed.2d 379 (1973) (acknowledging that Congress has the power to enter upon the criminal jurisdiction of the States where it clearly evidences such intent); *Screws v. United States,* 325 U.S. 91, 109, 65 S.Ct. 1031, 1039, 89 L.Ed. 1495 (1945) (plurality opinion) ("Under our federal system the administration of criminal justice rests with the States except as Congress, acting within the scope of [its] delegated powers, has created offenses against the United States."). In fact, Congress has enacted many criminal statutes where there are State statutes punishing similar conduct. The relevant inquiry, therefore, is not whether the States primarily regulate a particular activity, but whether the federal statute was enacted pursuant to Congress' constitutional authority. If it does, the Tenth Amendment is not violated. As discussed below, CSRA meets this test.

### B.

▮ The CSRA does not exceed Congress' power to regulate commerce among the States. While recognizing that several courts have found the statute in violation of the Commerce Clause,[4] upon close analysis there is a rational link between commerce and the harm proscribed by this statute. The nexus is sufficient to support Congress' authority to enact this statute and to support the Government's prosecution of this Defendant under the statute.

In *United States v. Lopez,* —— U.S. ——, —— – ——, 115 S.Ct. 1624, 1628–30, 131 L.Ed.2d 626 (1995), the court, for the first time since 1937, struck down a federal statute found to be in violation of the Commerce Clause. The case is instructive of this court's analysis.

In *Lopez,* the defendant was charged with and convicted under the Gun–Free School Zone Act of 1990, which prohibits the knowing possession of a firearm within a school zone. 18 U.S.C. § 922(q). On appeal, the defendant successfully challenged Congress' authority to enact the statute. The Act was struck down by the Court on the grounds that was indeed unconstitutionally enacted because by its terms "[it had] nothing to do with 'commerce' or any sort of economic enterprise, however broadly one might define those terms." *Lopez,* —— U.S. at —— – ——, 115 S.Ct. at 1630–31.

Since *Lopez,* a flurry of cases have been filed in federal court similarly challenging CSRA.[5] Although the jurisdictions considering the issue have reached diverse results, this court finds that the CSRA survives the challenge.

The Commerce Clause states that Congress shall have the power:

> To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes;

U.S. Const. art. I, § 8, cl. 3. Since the watershed case of *NLRB v. Jones & Laughlin Steel Corp.,* 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893 (1937), this clause has been interpreted to mean that Congress has powers to regulate three categories of activity. *See Lopez,* —— U.S. at —— – ——, 115 S.Ct. at 1628–30. Congress may regulate:

> [T]he use of the channels of interstate commerce[;] the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities[; and] those activities having a substantial relation to interstate commerce ... i.e., those activities that substantially affect interstate commerce.

*Lopez,* —— U.S. at —— – ——, 115 S.Ct. at 1629–30 (internal citations omitted).

---

4. *United States v. Parker,* 911 F.Supp. 830 (E.D.Pa.1995); *United States v. Bailey,* 902 F.Supp. 727 (W.D.Tex.1995); *United States v. Mussari,* 894 F.Supp. 1360 (D.Ariz.1995); *United States v. Schroeder,* 894 F.Supp. 360 (D.Ariz. 1995) (decided the same day as *Mussari* ).

5. *United States v. Parker,* 911 F.Supp. 830 (E.D.Pa.1995); *United States v. Bailey,* 902 F.Supp. 727 (W.D.Tex.1995); *United States v. Sage,* 906 F.Supp. 84 (D.Conn.1995); *United States v. Hopper,* 899 F.Supp. 389 (S.D.Ind. 1995); *United States v. Mussari,* 894 F.Supp. 1360 (D.Ariz.1995); *United States v. Schroeder,* 894 F.Supp. 360 (D.Ariz.1995) (decided the same day as *Mussari* ); *United States v. Hampshire,* 892 F.Supp. 1327 (D.Kan.1995).

Although Defendant and the Government do not agree on which category the court should base its determination of the issue, this court finds that CSRA survives the Commerce Clause challenge both because the Act represents a legitimate attempt by Congress to regulate the use of the channels of interstate commerce, as that phrase is construed, and because the activity at issue substantially affects interstate commerce.

■ In the first instance, "[t]he authority of Congress to keep the channels of interstate commerce free from immoral and injurious uses has been frequently sustained and is no longer open to question." *Lopez*, —— U.S. at ——, 115 S.Ct. at 1629 (citations omitted). Clearly the use of interstate travel to avoid payment of child support obligations presents Congress with a compelling reason to regulate such conduct. The legislative history of the CSRA supports such a conclusion.

Representatives were presented with numerous stories of "instance[s] where spouses, . . . [who] did not want to pay [child support], went to another State, waited just until the legal process was able to catch up with [them], and then went to another State and started the procedure all over again." 138 Cong.Rec. H7325 (1992). A report from the General Accounting Office included findings that one-third of child support cases involved parents living in different states, thus necessitating interstate transfers of the funds and significant intercourse between persons of different states. Of that one-third, fifty-seven percent of the custodial parents received their support payments through channels of interstate commerce occasionally, seldom or never. H.R.Rep. No. 771, 102d Cong., 2d Sess. 6 (1992). Evidence also supported that this failure to pay was markedly intentional and that movement over state lines significantly increased the chances of successfully avoiding these payments. *Id.*

The court recognizes that the statute's sweep is considerably broader and proscribes conduct even where there is no evidence of flight to avoid the child support obligation.

However, the "innocent" relocation to a different jurisdiction is no less an injurious use of the channels of interstate commerce than the intentional flight to avoid payment of child support obligations where it is accompanied by the non-payment of support obligations. Even the lawful use of interstate commerce may nonetheless result in injurious or immoral results. Because the channels of interstate commerce are necessarily used in every circumstance where this statute is applied, the court finds the statute supportable under the first category.

■ Because the obligor has travelled in interstate commerce, he enjoys the substantial, albeit indirect, benefit that residing in another state affords him in avoiding his obligations. While this approach may push the theoretical limits of Congressional authority to regulate the channels of interstate commerce, this court does not believe it is beyond the authority of Congress where the channels are "used" to bring about an immoral and injurious result.

> It is sufficient to reiterate the well-settled principle that Congress may impose relevant conditions and requirements on those who use the channels of interstate commerce in order that those channels will not become the means of promoting or spreading evil whether physical, moral or economic nature.

*United States v. Orito,* 413 U.S. 139, 144, 93 S.Ct. 2674, 2678, 37 L.Ed.2d 513 (1973).

■ With regard to the third category of activity which Congress may regulate, *Lopez* establishes, as the test, whether there is a rational basis for concluding that the regulated activity "substantially" affects interstate commerce. *Lopez*, —— U.S. at —— ——, 115 S.Ct. at 1629–30. Purely intrastate activities which so affect interstate commerce may be regulated. Thus, assuming, in arguendo, that the willful non-payment of past due child support is purely intrastate activity (an argument rejected above), there must be established a significant nexus with interstate commerce.[6] "[I]ntrastate activities that

---

**6.** A statute may satisfy this requirement by the inclusion of a jurisdictional element within its language which will "ensure, through case by case inquiry, that the [activity] in question affects interstate commerce." *Lopez*, —— U.S. at ——, 115 S.Ct. at 1631. Such a jurisdictional element

'have such a close and substantial relation to interstate commerce that their control is essential or appropriate to protect that commerce from burdens and obstructions'" are subject to regulation by Congress. *Lopez,* ___ U.S. at ___, 115 S.Ct. at 1628 (quoting *NLRB v. Jones & Laughlin Steel Corp.,* 301 U.S. 1, 37, 57 S.Ct. 615, 624, 81 L.Ed. 893 (1937)). In this court's view, even if the willful non-payment of child support is viewed as an intrastate activity, its consequences so affect interstate commerce as to allow for federal regulations.

The extent of Congress' authority to regulate intrastate activity is best illustrated in *Wickard v. Filburn,* 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122 (1942).

*Wickard* involved a Commerce Clause challenge to the Agriculture Adjustment Act of 1941. Roscoe Filburn owned a small farm in Ohio upon which he raised a small quantity of winter wheat to sell and for personal use on the farm. Because he exceeded his acreage allotment and yield, he was subjected to a penalty by the Secretary of Agriculture. He raised a Commerce Clause challenge to the Act because, by its terms, it extended to production "not intended in any part for commerce but wholly for consumption on the farm." *Id.* at 118, 63 S.Ct. at 86. The Court rejected the challenge finding that the Act was intended to increase the market price of wheat by limiting production and further finding that while Filburn's impact on the price of wheat was insignificant and indirect, the impact by him and all others similarly situated was significant and thus, subject to federal regulation.

■ Thus, even a seemingly personal and relatively insignificant activity may, in the context of broader considerations, provide the necessary nexus under the Commerce Clause. *Wickard* also illustrates that Congress' authority under the Commerce Clause may extend to non-commercial activity by a private actor if it is of the sort capable of repetition to a decree which substantially

affects interstate commerce. *See also Cheffer v. Reno,* 55 F.3d 1517, 1521 n. 6 (11th Cir.1995) ("[T]he Court often finds valid under the Commerce Clause statutes which penalize behavior substantially affecting interstate commerce without regard to the actor's commercial or private status.").

Congress' analysis that the willful non-payment of past due child support substantially affects interstate commerce is borne out by a reading of the congressional findings.[7] In this court's analysis as well, there is ultimately a substantial impact upon the intercourse of the national economy and, therefore, upon interstate commerce in the collective activity of willful non-payment of child support.

Most child support payments owed by the non-custodial parent residing in a different state require the transfer of monies through the channels of interstate commerce. Whether by use of the mail, interstate transportation or through electronic transfer of funds, interstate commerce is significantly involved. The failure to pay child support likewise creates economic intercourse impacting interstate commerce. Efforts at collecting such debts or locating the non-custodial parent so that collection may be facilitated spark the use of all forms of interstate channels of communications and travel. Accepting Congress' statistical findings as accurate, the collective economic impact of such intercourse is substantial to a degree allowing federal regulation.

The willful non-payment of past due child support creates (not results in) a substantial obstruction to and drain upon the national economy that is no less an impact on interstate commerce than the collective affect of the home grown wheat in *Wickard.* And, if it is appropriate for Congress to regulate individual activity to assure that the market price of wheat will remain high, it is no less

---

was clearly intended by Congress to be a part of CSRA, although it is somewhat vaguely stated. This provision alone may well be sufficient for upholding the statute. Because this motion argues that the activity at issue does not substan-

tially affect interstate commerce, the court will address the matter further.

7. *See Lopez,* ___ U.S. at ___ — ___, 115 S.Ct. at 1631–32.

appropriate that Congress regulate individuals to assure that the standard of living of the custodial parent and the child are not devastated, to the end that interstate commerce, in its broadest sense, is substantially impacted.[8]

Given the nature of the activity at issue and its direct economic impact, this analysis is not the type of "cost of crime" or "national productivity" analysis rejected by the court in *Lopez.* *See United States v. Parker,* 911 F.Supp. 830, 833–34 (E.D.Pa.1995). Billions of dollars are wrongfully withheld from custodial parents and children and thus from interstate commerce by the activity here sought to be regulated. While the impact of the activity may not be tied to any one specific form of commerce, it may reasonably be tied to all forms of interstate commerce transacted by the everyday affairs of citizens. In the court's view, this type obstruction of the intercourse between states is real, substantial and subject to federal regulation under category three.

### III.

For the foregoing reasons, this court finds the CSRA constitutional. The Defendant's **Motion to Dismiss Information,** (Doc. 13), is **DENIED.**

**Done and Ordered.**

---

**8.** The Defendant argues that the social and moral considerations inherent in the obligor's failure to pay child support should form no basis in the court's conclusion. While such considerations alone do not empower Congress to act, the fact that Congress has recognized the injurious and immoral nature of the activity and is expressly legislating against the same is no basis to conclude the statute is unconstitutional. *See, Heart of Atlanta Motel, Inc. v. United States,* 379 U.S. 241, 257, 85 S.Ct. 348, 357–58, 13 L.Ed.2d 258 (1964).