**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 97-10477

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

WILLIAM LEE ROSE,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Texas

August 26, 1998

Before DUHÉ, BENAVIDES and STEWART, Circuit Judges.

BENAVIDES, Circuit Judge:

The defendant, William Lee Rose ("Rose"), who conditionally pled guilty to a violation of the Child Support Recovery Act of 1992, 18 U.S.C. § 228 ("CSRA"), appeals the district court's denial of his motion to dismiss the charge against him. For the reasons set forth below, we AFFIRM.

I.

In 1981, Rose was ordered to pay child support by a South Carolina family court. He later moved to Texas where a Tarrant County court found him delinquent in those payments and in 1989

ordered him to begin $100.00 weekly payments on the arrearage and to continue his $100.00 weekly child support payments. Rose again failed to comply, and, two years after South Carolina listed him as one of the Ten Most Wanted Non-Supporting parents, he was charged under the CSRA for past due support obligations dating from October 26, 1992, through the date of the indictment in November 1996. After Rose pled guilty, the district court ordered him to pay restitution in the amount of $65,463.66 to the office of the Attorney General of Texas for the support of his minor child who lives in South Carolina. The court also imposed a five-year probation and a special assessment of $10.00.

Rose pled guilty only after the denial of his motion to dismiss. In its denial, the district court rejected Rose's argument that the CSRA unconstitutionally exceeds Congress's power. It also ruled that neither the doctrine of abstention nor the domestic relations exception to federal jurisdiction was applicable. In addition to appealing the denial of his constitutional claims, Rose attacks the district court's restitution order. He urges this Court to hold that the CSRA, in seeking to enforce support obligations arising before its enactment, violates the Ex Post Facto Clause of the United States Constitution.

## II.

We review constitutional challenges to a federal statute de novo. U.S. v. Bailey, 115 F.3d 1222 (5th Cir. 1997).

2

A.

Rose has raised constitutional challenges to the Child Support Recovery Act of 1992. He argues that Congress is without authority to enact this legislation. Alternatively, he charges that the statute violates the Tenth Amendment of the United States Constitution and that the district court erred in not abstaining from hearing the charge against him under the Younger or Burford doctrines or the domestic relations exception to federal jurisdiction. We hold that our opinion in U.S. v. Bailey, 115 F.3d 1222 (5th Cir. 1997), is dispositive of each these arguments and affirm the district court's denial.

B.

Rose next brings an ex post facto challenge to the restitution order in this case. In general, the Ex Post Facto Clause prohibits the retrospective application of a criminal law which prejudices a defendant. See U.S. Const. art. I, § 9, cl. 3. In order for a criminal law to be ex post facto, the law "must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it." Weaver v. Graham, 450 U.S. 24, 29, 101 S. Ct. 960, 964 (1981) (citations and internal footnotes omitted). Thus, a statute violates the Ex Post Facto Clause if (1) it criminalizes conduct that was legal when done; (2) inflicts greater punishment for an offense than was inflicted by the law in existence at the time the offense was committed; or (3) eliminates a defense that was available under the

3

law at the time the offense was committed. Collins v. Youngblood, 497 U.S. 37, 42, 110 S. Ct. 2715, 2719 (1990).

In pertinent part, the CSRA provides that "[u]pon a conviction under this section, the court shall order restitution under section 3663 in an amount equal to the past due support obligation as it exists at the time of sentencing." 18 U.S.C. § 228(c). As Rose points out, given his history of non-payment, the restitution that the district court was obliged to order under § 228(c) necessarily encompassed amounts which had become past due before the effective date of the CSRA. Rose argues that the inclusion of those amounts in his restitution order violates the Ex Post Facto Clause. This is an issue of first impression in this circuit.

Although we have not addressed the retroactivity of the CSRA, we have previously held that retrospective restitution ordered under the Victim and Witness Protection Act ("VWPA"), 18 U.S.C. § 3663, the vehicle through which the CSRA is enforced, raises ex post facto concerns. See United States v. Corn, 836 F.2d 889, 895–96 (5th Cir. 1988). Prior to the effective date of the VWPA, January 1, 1983, a court could order restitution only as a condition of probation. The VWPA, however, "expand[ed] current law by authorizing an order of restitution independent of a condition of probation, thereby permitting its use in conjunction with imprisonment, fine, suspended sentence, or other sentence imposed by the court." Id. at 895 (quoting S. Rep. No. 532, 97th Cong., 2d Sess. 32 (1982), reprinted in 1982 U.S.C.C.A.N. 2515, 2538).

4

Recognizing this, we found an ex post facto violation in Corn to the extent that the restitution ordered by the district court stemmed from events that occurred before the effective date of the VWPA.

Although the VWPA is the enforcement mechanism for restitution ordered under the CSRA, restitution ordered under the CSRA does not raise the same ex post facto concerns as restitution ordered under the VWPA. First, unlike the application of the VWPA in Corn, restitution under the CSRA is not retrospective. In order to be retrospective, the law must "change[] the legal consequences of acts completed before its effective date." Miller v. Florida, 482 U.S. 423, 430, 102 S. Ct. 2446, 2451 (1987). By its terms, the CSRA imposes punishment only upon those who willfully fail to pay past due child support obligations after October 25, 1992, the effective date of the statute. Thus, the CSRA does not change the legal consequences of Rose's failure to pay past due child support obligations before October 25, 1992. The inclusion of those past due child support obligations which arose before the effective date of the CSRA in the restitution order does not affect this conclusion. One of the primary reasons for the Ex Post Facto Clause was to assure that people were given "fair warning" of the effect of legislative enactments. Weaver, 450 U.S. at 28-29, 101 S. Ct. at 964. At the time Rose committed the offense in this case, the law had been on the books, and the consequences of his failure to pay his past due child support obligations were quite

5

clear. In short, "the CSRA gives fair warning that the district court shall order restitution in the full amount due at the time of sentencing." United States v. Crawford, 115 F.3d 1397, 1403 (8th Cir.), cert. denied, -- U.S. --, 118 S. Ct. 341 (1997); accord United States v. Hampshire, 95 F.3d 999, 1005-06 (10th Cir. 1996).

Moreover, even assuming that the restitution ordered by the CSRA is retrospective, Rose has not suffered any disadvantage because the CSRA does not create an obligation where none existed before. The CSRA, by its defining terms, exists to enforce an earlier state court finding that a past due support obligation exists. See 18 U.S.C. § 228(d)(1)(B). Since 1981, Rose has been under a South Carolina court order to pay child support, an obligation that he has repeatedly failed to meet. In 1989, a Tarrant County court ordered Rose to make payments of $100 per week for current child support and $100 per week for his past due obligations. Rose defaulted on this order as well. Rose's defaults on these previous orders constitute unlawful conduct. Thus, Rose would have to pay his past due child support whether or not a federal court ordered him to do so in the form of restitution because he was already obligated to do so by two state-court decrees. The only possible "disadvantage" confronting Rose is that he may actually find it more difficult to avoid his pre-existing legal obligations. This is not a "disadvantage" proscribed by the

6

Ex Post Facto Clause.[1]

                              III.

     For the reasons set forth above, we AFFIRM.

---

[1] Our holding that the restitution ordered under the CSRA does not raise ex post facto concerns is in accord with each of the other circuit courts that have addressed the issue. See United States v. Hampshire, 95 F.3d 999 (10th Cir. 1996); United States v. Crawford, 115 F.3d 1397 (8th Cir.), cert. denied, __ U.S. __, 118 S. Ct. 341 (1997); United States v. Black, 125 F.3d 454 (7th Cir. 1997). Each of these cases held, in part, that CSRA restitution does not constitute punishment within the meaning of the Ex Post Facto Clause; rather, these courts held that restitution under the VWPA is predominantly compensatory in nature and has as its purpose to ensure that the victims, to the greatest extent possible, are made whole for their losses. See, e.g., Hampshire, 95 F.3d at 1006. Given our holding in Corn, however, and our subsequent cases which hold that restitution is, at least in part, penal in nature, see United States v. Mmahat, 106 F.3d 89, 92 (5th Cir.), cert. denied, -- U.S. --, 118 S. Ct. 136 (1997) (holding that any form of restitution has both compensatory and penal aspects); United States v. Hayes, 32 F.3d 171, 172 (5th Cir. 1994) ("Restitution is a criminal penalty and a component of the defendant's sentence."), we cannot adopt this reasoning. Of course, we agree entirely with these courts' subsequent conclusion that even if restitution under the CSRA is punishment within the meaning of the Ex Post Facto Clause, there is still no ex post facto violation.