**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                    No. 99-4456

LOUIS L. WILSON,
Defendant-Appellant.

Appeal from the United States District Court
for the District of South Carolina, at Florence.
C. Weston Houck, Chief District Judge.
(CR-97-694)

Argued: March 3, 2000

Decided: April 14, 2000

Before WIDENER and KING, Circuit Judges, and
James H. MICHAEL, Jr., Senior United States District Judge
for the Western District of Virginia, sitting by designation.

_____

Affirmed by published opinion. Judge King wrote the opinion, in
which Judge Widener and Senior Judge Michael joined.

_____

**COUNSEL**

**ARGUED:** William Fletcher Nettles, IV, Assistant Federal Public
Defender, Florence, South Carolina, for Appellant. Eric William
Ruschky, Assistant United States Attorney, Columbia, South Caro-
lina, for Appellee. **ON BRIEF:** J. Rene Josey, United States Attor-
ney, Columbia, South Carolina, for Appellee.

_____

**OPINION**

KING, Circuit Judge:

On July 8, 1998, appellant Louis L. Wilson was indicted in the District of South Carolina for violating the Deadbeat Parents Punishment Act ("DPPA"), 18 U.S.C. § 228(a)(3) (Supp. 1999), for willfully failing to pay more than $10,000 in past due support obligations. Wilson moved in the district court to dismiss the indictment, alleging that it violated the Ex Post Facto Clause of the Constitution of the United States.**1** After the district court denied his motion to dismiss, Wilson entered a conditional guilty plea to the charge in the indictment, reserving his right, pursuant to Federal Rule of Criminal Procedure 11(a)(2), to appeal the adverse constitutional ruling. Finding no error, we affirm.

I.

On January 18, 1984, Wilson and his wife entered into a separation agreement whereby Wilson agreed to pay $800 per month as child support. Wilson moved for temporary relief from this agreement, and on November 13, 1984, the Family Court of Horry County, South Carolina, reduced Wilson's child support obligation to $300 per month. After Wilson failed, however, to appear at the final hearing on his wife's petition for separate maintenance and support, the child support obligation was reinstated to $800 per month. On July 24, 1985, the Family Court held Wilson in contempt for willful non-compliance with its previous orders to pay child support, but the court reduced his child support obligation to $500 per month, effective August 1, 1985. Except for some payments made in 1985, Wilson made no support payments pursuant to the July 24, 1985 order until after the return of the indictment in this case. At the time he was sentenced on June 15, 1999, Wilson owed $83,398.55 in child support payments and $2,501.96 in court costs, for a total of $85,900.51.

On July 23, 1997, the United States Attorney for the District of South Carolina filed a criminal information charging Wilson, a Mary-

_____

**1** The Ex Post Facto Clause provides that: "No Bill of Attainder or ex post facto Law shall be passed." U.S. Const. art. I, § 9, cl. 3.

land resident, with a misdemeanor violation of the Child Support Recovery Act of 1992 ("CSRA"), 18 U.S.C. § 228, amended by 18 U.S.C. § 228 (Supp. 1999). Based on the filing of the information, an arrest warrant was issued for Wilson by the United States Magistrate Judge, but it was never executed.[2] The CSRA criminalized the willful failure to pay a past due support obligation for a child residing in a different state, if the obligation had remained unpaid for longer than one year or was greater than $5,000. Under the CSRA, a first-time offender could be punished by either a fine or imprisonment for not more than six months, or both. Thus, a first offense violation of the CSRA constituted a misdemeanor. See 18 U.S.C. § 3559(a)(7).

On June 24, 1998, the CSRA was amended by the DPPA, Pub. L. No. 105-187, 112 Stat. 618 (1998) (codified at 18 U.S.C. § 228 (Supp. 1999)). The amended statute incorporated new felony provisions, providing for a fine and up to two years' imprisonment, or both, for the willful failure to pay a child support obligation with respect to a child living in another state if the obligation had remained unpaid for over two years or was greater than $10,000.[3]

_____

[2] The information was subsequently dismissed on the motion of the Government.

[3] The amended statute provides in relevant part as follows:

> (a) OFFENSE. -- Any person who --
>
> . . . .
>
> (3) willfully fails to pay a support obligation with respect to a child who resides in another State, if such obligation has remained unpaid for a period longer than 2 years, or is greater than $10,000; shall be punished as provided in subsection (c).
>
> . . . .
>
> (c) PUNISHMENT. -- The punishment for an offense under this section is --
>
> . . . .
>
> (2) in the case of an offense under paragraph (2) or (3) of subsection (a) . . . a fine under this title, imprisonment for not more than 2 years, or both.

18 U.S.C. § 228 (Supp. 1999).

Two weeks later, on July 8, 1998, Wilson was indicted by a grand jury in the District of South Carolina for violating the felony provisions of the DPPA, the amended § 228 of Title 18, for willfully failing to pay a support obligation. More specifically, the indictment charged:

> From on or about June 24, 1998, and continuing to the date of this Superseding Indictment, in the District of South Carolina, Louis L. Wilson, who does not reside in South Carolina, willfully did fail to pay a support obligation with respect to a child who resides in South Carolina and which obligation has remained unpaid for a period longer than two years and is greater than $10,000.00;
>
> In violation of Title 18, United States Code, Section 228(a)(3).

J.A. 8.[4]

Wilson then moved to dismiss the felony charge in the indictment on constitutional grounds, alleging that because he had not accrued past due support obligations greater than $10,000 after June 24, 1998, the effective date of the DPPA, the Government's reliance on his total past due obligations, including those accrued prior to June 24, 1998, violated the Ex Post Facto Clause. It is undisputed that, as of June 24, 1998, Wilson had accumulated more than $10,000 in unpaid support obligations. It is also undisputed that, between June 24, 1998 and July 8, 1998 (the date of the indictment), Wilson had not accrued more than $10,000 in unpaid support obligations.

_____

[4] The Government subsequently decided to proceed based solely on the $10,000 prong of § 228(a)(3), moving to strike as surplusage the allegation in the indictment that Wilson's support "obligation has remained unpaid for a period longer than two years." Although it never expressly ruled on this motion, the district court's conviction and sentence of Wilson was based exclusively on the $10,000 prong of § 228(a)(3). The court's action was entirely proper, given that § 228(a)(3) is drawn in the disjunctive, criminalizing the willful failure to pay a support obligation that: (1) has remained unpaid for a period longer than two years; or (2) is greater than $10,000.

4

On October 27, 1998, the district court denied Wilson's motion to dismiss, concluding that the DPPA's application to Wilson did not violate the Ex Post Facto Clause. Wilson has timely appealed.

II.

A.

We review de novo a district court's ruling on whether the Ex Post Facto Clause bars a criminal prosecution. Plyler v. Moore, 129 F.3d 728, 734 (4th Cir. 1997). The Ex Post Facto Clause prohibits the application of laws that "retroactively alter the definition of a crime or [retroactively] increase the punishment for criminal acts." United States v. O'Neal, 180 F.3d 115, 121 (4th Cir. 1999) (quoting Collins v. Youngblood, 497 U.S. 37, 43 (1990)). Accordingly, a statute will violate the Ex Post Facto Clause if it: (1) retroactively imposes a punishment for an act that was not punishable at the time the act was committed, Weaver v. Graham, 450 U.S. 24, 28 (1981); or (2) retroactively imposes a greater punishment for an offense than was prescribed by the law in existence at the time the offense was committed, California Dep't of Corrections v. Morales, 514 U.S. 499, 507 n.3 (1995). Essentially, the guiding question in evaluating the constitutionality of the DPPA, as applied to Wilson, is "whether the law changes the legal consequences of acts completed before its effective date." Weaver, 450 U.S. at 31.

B.

Wilson argues on appeal that his prosecution under the DPPA is unconstitutional on two grounds. First, he maintains, albeit in a somewhat roundabout fashion, that the DPPA impermissibly criminalizes his pre-DPPA conduct -- the accrual of past due support obligations in a sum greater than $10,000. As such, Wilson argues that his indictment violates the Ex Post Facto Clause because it necessarily relies on conduct that occurred prior to the June 24, 1998 effective date of the DPPA.

Second, Wilson asserts that, insofar as the Government relies on his failure to make support payments prior to the DPPA's enactment,

5

the Ex Post Facto Clause is violated because the DPPA thereby increases the punishment for acts committed by Wilson before its passage. Specifically, Wilson contends that the only way the Government could demonstrate that he had willfully failed to pay a sum greater than $10,000 in support obligations -- as alleged in the indictment -- was to rely on his conduct prior to June 24, 1998. According to Wilson, the Government's reliance on his pre-June 24, 1998 conduct retroactively imposes greater punishment for the offense than was imposed by the law as it existed when the offense was committed and that his indictment thereby contravenes the Ex Post Facto Clause.

C.

We find Wilson's arguments unpersuasive and we are constrained to reject them. Contrary to Wilson's suggestions, the conduct made criminal by the DPPA is the willful failure to pay child support obligations. Since the Government established that Wilson willfully failed to pay after June 24, 1998, when the DPPA became effective, both of his arguments must fail.

1.

In this regard, we find ourselves in agreement with the recent decision in United States v. Russell, 186 F.3d 883 (8th Cir. 1999), in which the Eighth Circuit considered the identical arguments raised here. In Russell, the defendant claimed that his prosecution under the DPPA violated the Ex Post Facto Clause of the Constitution because he had not accrued a past due support obligation greater than $10,000 after the June 24, 1998 enactment of the DPPA. The Eighth Circuit rejected this argument, holding that the timing of the accrual is irrelevant for purposes of the Ex Post Facto Clause:

> [T]he DPPA's requirement that the defendant have in excess of $10,000 in past due support obligations identifies what kind of obligation the defendant must willfully fail to pay to be subject to prosecution; the statute does not criminalize the mere accrual of those past due support obligations.

Id. at 886.

6

In Russell, Judge Magill relied on his Circuit's earlier decision in United States v. Woods, 696 F.2d 566 (8th Cir. 1982), where the defendant had appealed a conviction for violating 18 U.S.C. § 1202(a)(1) (repealed 1986), which prohibited convicted felons from possessing firearms that had affected or travelled in interstate commerce. Alleging that the Government could not prove that the firearm found in his possession had crossed state lines after the statute became effective, the defendant in Woods asserted that his conviction violated the Ex Post Facto Clause. The Eighth Circuit rejected this claim and upheld Woods's conviction, reasoning that the statute criminalized the possession of a firearm by a felon, rather than its interstate transport, concluding: "[W]e are not concerned with when the revolver traveled in interstate commerce, but only [with] when the appellant possessed a firearm which had traveled in interstate commerce." Id. at 572.

We find the Eighth Circuit's reasoning in both the Russell and Woods decisions to be compelling. Like the interstate commerce requirement at issue in Woods, the $10,000 requirement in § 228(a)(3) refers simply to the amount of the obligation one must willfully fail to pay in order to be subject to criminal sanction under the DPPA. As we have noted, the essence of the criminal act here is Wilson's willful failure to pay; the existence of past due obligations in a sum greater than $10,000 merely brings him within the scope of the statute. Therefore, the fact that Wilson's past due support obligations exceeded $10,000 prior to the DPPA's enactment is irrelevant to his argument -- the conduct prohibited by the DPPA is, as the indictment properly alleged, Wilson's willful failure to pay. **5** Simply put, the rele-

_____

**5** Our recent decision in United States v. Mitchell, No. 99-4008, 2000 WL 309298 (4th Cir. Mar. 27, 2000), provides further support for our conclusion today. In Mitchell, the defendant was convicted of violating 18 U.S.C. § 922(g)(9), possession of a firearm by a person convicted of a domestic violence misdemeanor. The defendant argued that application of the statute contravened the Ex Post Facto Clause, because the purchase of the firearm found in his possession and his domestic violence conviction each occurred prior to enactment of § 922(g)(9). We rejected this argument, with Chief Judge Wilkinson correctly concluding:

> It is immaterial that Mitchell's firearm purchase and domestic violence conviction occurred prior to § 922(g)(9)'s enactment

7

vant fact is not when Wilson's debt in excess of $10,000 accrued, but rather when the willful failure to pay occurred. Here, the charge was clearly made that Wilson willfully failed to pay his past due support obligation, in a sum greater than the statutory amount, <u>after</u> the effective date of the DPPA.**6**

Wilson's reliance on <u>United States v. Mussari</u>, 152 F.3d 1156 (9th Cir. 1998), is misplaced. In <u>Mussari</u>, the Ninth Circuit held a prosecution under the CSRA to be unconstitutional on ex post facto grounds. There, the indictment charged the defendant with failing to pay support obligations for a period prior to enactment of the statute, beginning November 1, 1988, and ending January 11, 1995, despite the fact that the CSRA did not go into effect until October 25, 1992. Pointing out that some of the conduct charged in the indictment predated the CSRA's enactment, the Ninth Circuit held that only those acts committed after the effective date of the CSRA could be considered in determining whether the defendant violated § 228: "[A]cts of Mussari before the statute was enacted cannot constitutionally be made a federal crime." <u>Id.</u> at 1158.

Conversely, Wilson was not charged with illegal conduct occurring prior to enactment of the DPPA; rather, the indictment expressly

_____

because the conduct prohibited by § 922(g)(9) is the <u>possession</u> of a firearm. . . . As it is undisputed that Mitchell possessed the firearm after the enactment of § 922(g)(9), the law's application to Mitchell does not run afoul of the ex post facto prohibition.

<u>Id.</u> at *3

**6** In analogous cases involving ex post facto challenges to the CSRA, other courts have rejected arguments similar to those raised by Wilson. In <u>United States v. Black</u>, 125 F.3d 454 (7th Cir. 1997), <u>cited in Russell</u>, 186 F.3d at 886, the defendant argued that the CSRA as applied to him retroactively criminalized his pre-CSRA conduct because he had accrued some of his past due support obligations prior to the CSRA's enactment. The Seventh Circuit rejected the defendant's ex post facto challenge, stating, "[The fact] [t]hat this debt arose before the passage of the CSRA is irrelevant. What is relevant is that it remained unpaid." <u>Id.</u> at 466-67. <u>See also United States v. Crawford</u>, 115 F.3d 1397, 1402-1403 (8th Cir. 1997); <u>United States v. Rose</u>, 153 F.3d 208, 211 n.1 (5th Cir. 1998).

8

alleged that Wilson willfully failed to pay his support obligation after the DPPA became effective. Thus, Wilson's prosecution was not based on allegations of criminal conduct predating enactment of the DPPA, and Mussari is of no assistance to him.

2.

Wilson's second argument -- that the DPPA retroactively increases the punishment for the willful failure to pay child support obligations -- fails for the same reason. As emphasized above, the criminal conduct at issue in this case occurred after the effective date of the DPPA. Since Wilson was convicted and sentenced based on post-enactment conduct, he was punished in accordance with the law as it existed when the offense was committed. Thus, the DPPA does not retroactively impose a greater punishment for the failure to pay child support obligations than was prescribed at the time Wilson willfully failed to pay the support obligations alleged in the indictment. His punishment for this offense therefore does not violate the Ex Post Facto Clause. See Crawford, 115 F.3d at 1402-03 (8th Cir. 1997).

III.

In sum, because Wilson was convicted solely for acts occurring on or after the June 24, 1998 effective date of the DPPA, his conviction does not violate the Ex Post Facto Clause. We therefore affirm the district court's denial of Wilson's motion to dismiss, and we affirm his conviction and sentence.

AFFIRMED

9