UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

v.                                              No. 00-4055

GREGORY LAMONT WILLIAMS,
          *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
James R. Spencer, District Judge.
(CR-99-162)

Argued: September 29, 2000

Decided: January 22, 2001

Before LUTTIG and WILLIAMS, Circuit Judges, and
Frederick P. STAMP, Jr., Chief United States District Judge
for the Northern District of West Virginia, sitting by designation.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Reginald Moore Barley, Richmond, Virginia, for Appellant. Sara Elizabeth Flannery, Special Assistant United States Attorney, Richmond, Virginia, for Appellee. **ON BRIEF:** Helen F. Fahey, United States Attorney, Richmond, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

PER CURIAM:

Gregory Lamont Williams appeals his conviction for willful failure to pay past due child support obligations in violation of the Deadbeat Parents Punishment Act (DPPA), 18 U.S.C.A. § 228(a)(3) (West Supp. 2000). Williams argues that his conviction violates the Ex Post Facto Clause of the United States Constitution, U.S. Const. art. 1, § 9, cl. 3; that the evidence was insufficient to support the district court's finding that his failure to pay was "willful"; and that the indictment failed adequately to allege a violation of the DPPA. The Government, while not cross-appealing, argues that the district court's restitution order was too small. We affirm Williams's conviction but decline to disturb the district court's restitution order.

### I.

Williams and Velma Jackson-Williams ("Jackson-Williams") were married on August 26, 1978 in Henrico County, Virginia. Two children were born of the marriage — Ryan Christopher, born April 29, 1982, and Shannon Renee, born May 28, 1984.[1] Williams and Jackson-Williams were divorced on August 6, 1986 by the Circuit Court of Henrico County, Virginia. The divorce decree, which incorporated a property settlement, ordered Williams to pay $400 per month in child support, plus one-half of the children's health insurance premiums and one-half of all of the children's medical and dental expenses not covered by insurance (hereinafter all support obligations will be referred to as "child support"). The child support order was increased several times by the Virginia state court, reaching $700 per month on June 18, 1991. In late 1992, after several years of

---

[1]Ryan Williams was born with a congenital heart disorder and was placed on the list for a heart transplant in 1997. He died on March 9, 1999.

controversies involving Williams's slow payments of child support, Jackson-Williams learned that Williams had moved to Michigan; she called him in February of 1993 to discuss his overdue child support.[2]

In 1993, the State of Virginia filed a petition with the Michigan Circuit Court under the Uniform Reciprocal Enforcement of Support Act, Mich. Comp. Laws Ann. §§ 780.151-780.183 (West 1998), seeking collection of arrearages due, payment of medical expenses, and prospective enforcement of the Virginia child support order. On January 24, 1994, the Michigan court entered an Order for Support in the amount of $75.75 per week, consisting of $65 per week in child support payments, $10 per week toward accumulated arrearages, and $.75 in court fees. The order did not mention the issue of medical expenses and did not directly address the existing Virginia order. Williams became delinquent under the terms of the Michigan order, and in 1995 he was ordered to pay an additional $35 per week towards his arrearages under that order. Williams failed to make these payments, and in April of 1995, a bench warrant was issued for failure to pay his obligations under the Michigan order. By this time, however, Williams had moved to Tennessee after Joan Williams, whom he married in 1995, accepted a job in that state. During 1995 he paid no child support to either jurisdiction. In the summer of 1996, after locating Williams in Tennessee, the State of Virginia filed a petition in the Tennessee state courts under the Uniform Interstate Family Support Act (UIFSA), Tenn. Code Ann. §§ 36-5-2001 to 36-5-2902 (1999), seeking enforcement of the Virginia order and collection of arrearages under the Virginia order. Williams made two payments in 1996 through the Michigan courts, totaling approximately $6,700. No payments were made in 1997.

Sometime in 1996, Joan Williams accepted a job in California, and in 1997, Williams joined her there. They jointly owned a residence in California valued at $535,000. In 1998, the State of Virginia filed a UIFSA petition with the California authorities seeking enforcement of the Virginia order and collection of arrears. The California child support authorities initially requested a copy of the Michigan order,

---

[2]Jackson-Williams testified in the district court proceedings below that Williams told her that he had other commitments and could not make child support payments.

asserting that it was controlling, but they later concluded that because neither party was living in Michigan, the Virginia order was controlling. However, because the State of Virginia took certain direct measures such as wage garnishment to achieve collection, California closed its case on January 8, 1999.

On June 24, 1998, Congress enacted the DPPA, which provides enhanced punishment for the interstate failure to pay child support obligations. The DPPA established a penalty of up to two years in prison, a fine and restitution for, inter alia, the willful failure to pay a support obligation "with respect to a child who resides in another State, if such obligation has remained unpaid for a period longer than 2 years, or is greater than $10,000." 18 U.S.C.A. § 228(a)(3) (West 2000).

On May 18, 1999, Gregory Williams was indicted by a Grand Jury sitting in the Richmond Division of the United States District Court for the Eastern District of Virginia for willfully failing to pay past due child support obligations in violation of the DPPA. On August 27, 1999, the district court denied Williams's Motion to Dismiss the indictment, wherein he argued that the child support order entered by the Virginia courts had been validly modified by the Michigan courts and thus, the amount of arrearage was less than $10,000. After a bench trial, the district court found Williams guilty and, after a hearing, imposed a sentence of twenty-four months incarceration, a $100 fine, and $24,318.17 in restitution. Williams filed a timely appeal challenging his conviction. Williams argues that the district court's reliance on arrearages that accrued before the effective date of the DPPA violates the Ex Post Facto Clause of the Constitution, that the evidence presented at trial was insufficient to support the district court's finding that his failure to pay after the effective date of the DPPA was willful, and that the indictment failed adequately to allege willful nonpayment of a support obligation two years overdue or in an amount greater than $10,000. The Government argues, without a cross-appeal, that the district court's restitution order was erroneous in that it used the Michigan court's monthly support figure, rather than that of the Virginia court, as the basis for calculating restitution. We address each argument in turn.

## II.

## A.

Williams argues first that the district court's reliance on arrearages that accrued before the effective date of the DPPA to establish the requisite overdue amount or arrearage period "changes the legal consequences of acts completed before [the statute's] effective date," *Weaver v. Graham*, 450 U.S. 24, 31 (1981), thus violating the Ex Post Facto Clause. We review de novo a district court's ruling on whether a statute violates the Ex Post Facto Clause. *Plyler v. Moore*, 129 F.3d 728, 734 (4th Cir. 1997).

Our decision in April of this year in *United States v. Wilson*, 210 F.3d 230 (4th Cir. 2000), is controlling on this issue. *Wilson* addressed the application of the DPPA under circumstances in which the $10,000 arrearage amount required by the statute[3] could only be satisfied by considering arrearages which accrued prior to the DPPA's date of enactment. *See id.* at 233 (noting that it was undisputed that the defendant had not accrued more than $10,000 in support obligations after the enactment of the DPPA). We noted that "the essence of the criminal act here is Wilson's willful failure to pay; the existence of past due obligations in a sum greater than $10,000 merely brings him within the scope of the statute." *Id.* at 234. We held that because "Wilson was convicted and sentenced based on post-enactment conduct, he was punished in accordance with the law as it existed when the offense was committed . . . . His punishment for this offense therefore does not violate the Ex Post Facto Clause." *Id.* at 235-36. Because the conduct prohibited by the DPPA is the willful failure to pay overdue child support, the Ex Post Facto Clause is not violated where the indictment alleges, and the government establishes, that such willful failure occurred after the enactment of the DPPA. *See id.*; *see also United States v. Russell*, 186 F.3d 883, 886 (8th Cir. 1999) (holding that "the government's reliance on . . . pre-enactment accumulation of past due support obligations [to establish

---

[3]In *Wilson*, the government elected not to argue that the two-year arrearage prong was satisfied, instead proceeding exclusively on the $10,000 prong of the statute. *See United States v. Wilson*, 210 F.3d 230, 233 (4th Cir. 2000).

$10,000 in past-due child support under the DPPA] does not violate the Ex Post Facto Clause").

Williams relies heavily upon *United States v. Mussari*, 152 F.3d 1156 (9th Cir. 1998), a case decided under the Child Support Recovery Act (CSRA), the DPPA's predecessor statute. The indictment at issue in *Mussari*, however, explicitly alleged willful failure to pay during a period beginning prior to the enactment of the CSRA. *See id.* at 1158. The Ninth Circuit found that the district court had unconstitutionally convicted Mussari of willfully *failing to pay* at times prior to the enactment of the CSRA. Because the district court "drew no distinction" between willful failure to pay prior to and following the enactment of the CSRA, the district court "applied the statute retroactively" to criminalize incidents of nonpayment that were complete prior to the CSRA's enactment. *Id.* The Ninth Circuit suggested that an indictment limited to an allegation that the willful failure occurred only after the CSRA's enactment would pose no Ex Post Facto problem. *See id.* As this Circuit noted in *Wilson*, *Mussari* is thus inapplicable to a situation such as this one, in which the indictment alleged that the willful failure to pay occurred exclusively after the enactment of the DPPA. *See Wilson*, 210 F.3d at 235. Thus, we hold that the district court did not err in rejecting Williams's Ex Post Facto claim.

### B.

Williams next asserts, for the first time at oral argument, that the evidence was insufficient to support the district court's finding that his failure to pay overdue child support was willful. It is the practice of this Court, subject to certain exceptions not applicable here,[4] not to consider contentions that the parties have not raised in the briefs, but instead have made for the first time at oral argument. *See Goad v. Celotex Corp.*, 831 F.2d 508, 512 n.12 (4th Cir. 1987) (declining

---

[4]For example, arguments alleging a lack of subject matter jurisdiction may be raised for the first time at oral argument, since such claims are never waived and may be considered *sua sponte* even if never raised by the parties. *See Quinn v. Haynes*, ___ F.3d ___, No. 99-7520, slip op. at 6 (4th Cir. Dec. 6, 2000) (addressing question of subject-matter jurisdiction that was not raised by any party).

to consider a point because it was not raised in the briefs); *cf. 11126 Baltimore Boulevard, Inc. v. Prince George's County*, 58 F.3d 988, 993 n.7 (4th Cir. 1995) (deeming an issue abandoned on appeal where it was mentioned in the table of contents of a party's brief but was not substantively briefed). *See also Jacobsen v. Harris*, 869 F.2d 1172, 1174 (8th Cir. 1989) (stating that the court need not reach the merits of an argument raised for the first time at oral argument). Thus, we do not address the merits of Williams's sufficiency of the evidence argument.

C.

Williams further argues that the indictment was defective, in that it did not allege with adequate specificity the components of the amount of overdue child support which Williams was charged with willfully failing to pay. Williams, however, did not attack the specificity of the indictment below, nor did he request a bill of particulars to address the lack of detail to which he now objects. A defendant who contends that he or she was not fairly apprised of the charges in question should request a bill of particulars under Federal Rule of Criminal Procedure 7(f). Failure to do so causes this Court to "construe[ ] [the indictment] more liberally . . . so that if the indictment contains allegations which clearly express what was meant to be charged . . . any technical deficiency [is] cured by the conviction and judgment." *United States v. Caldwell*, 544 F.2d 691, 695 (4th Cir. 1976). Here, the indictment alleged a specific sum of overdue child support and stated the basis for this figure: the monthly sum decreed in the last Virginia order plus one-half of the children's medical expenses, also decreed in the Virginia order. Williams argues that the failure to itemize the medical expenses in the indictment is a fatal defect, but he cites no authority for the proposition that an indictment alleging nonpayment of a child support obligation must include a detailed itemization of the sort he proposes. We thus conclude that the indictment adequately alleged a violation of the DPPA and adequately informed Williams of the charges against him. Any valid objection to the failure to itemize the overdue medical expenses was waived by Williams's failure to request a bill of particulars or challenge the indictment as insufficiently specific below.

### III.

Finally, the Government contends that the district court's restitution order, which was based on the lower monthly support figure embodied in the Michigan order, was incorrect. The Government argues, as it did in the district court, that the Michigan order did not validly modify the Virginia order and that, in any event, the district court's restitution award is inconsistent because it is based upon the medical-expense obligation embodied in the Virginia order, coupled with the monthly support payment contained in the Michigan order. Thus, while conceding that it "did not appeal [Williams's] sentence" (Appellee's Br. at 15), the Government nevertheless asks that this Court modify the district court's restitution award to reflect the higher Virginia monthly support order.

Federal Rule of Appellate Procedure 4(b)(1)(b) provides that appeals by the government in a criminal case must be filed within 30 days of the later of the entry of the judgment appealed from or the filing of the defendant's notice of appeal. In the civil context, this Court has held that an appellee who has not cross-appealed "could not[ ] seek relief which enlarges that given him by the district court's judgment . . . . Under the circumstances, we may only affirm that result." *Pritchett v. Alford*, 973 F.2d 307, 315 (4th Cir. 1992) (citing *United States v. American Railway Express*, 265 U.S. 425, 435 (1924)); *see also Tug Raven v. Trexler*, 419 F.2d 536, 548 (4th Cir. 1969) (stating a "rule of practice" that "ordinarily an appellee . . . cannot secure alteration or modification of a judgment unless he has taken his own appeal."). Other courts have applied these principles in the context of criminal appeals. *See United States v. Coscarelli*, 149 F.3d 342, 343 (5th Cir. 1998) (en banc) (holding that where the government has appealed a sentence but the defendant has not cross-appealed, "an appellate court simply has no authority to grant [the defendant] relief that would expand his rights under the judgment."); *cf. United States v. Morales*, 108 F.3d 1213, 1222-26 (10th Cir. 1997) (relying on the timeliness of the government's filing of its cross-appeal to refuse a motion to dismiss the cross-appeal, implying that the timely filing of a cross-appeal by the government is at least ordinarily a prerequisite to the consideration of a request for relief that goes beyond modifying the judgment below.). We thus conclude that the failure of the Gov-

ernment to cross-appeal bars us from addressing its request that the restitution amount be increased.

## IV.

In conclusion, we find that Williams's Ex Post Facto argument is foreclosed by Fourth Circuit precedent, that his attacks on the sufficiency of the evidence may not be raised for the first time at oral argument, and that any defects in the indictment were cured by Williams's failure to request a bill of particulars or to object to the indictment as insufficiently specific. We find that the Government's request for an increase in the restitution amount is barred by its failure to cross-appeal. The judgment of the district court is, therefore, affirmed.

*AFFIRMED*